UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TANNER TROSPER, on behalf of himself, individually, and all others similarly situated,<br><br>        Plaintiff,<br>    v.<br><br>STRYKER CORPORATION, HOWMEDICA OSTEONICS CORPORATION and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.: 13-CV-0607-LHK<br><br>ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Tanner Trosper ("Trosper") filed this putative class action against his former employers, Stryker Corporation ("Stryker") and Howmedica Osteonics Corporation ("Howmedica"), alleging that he had not been indemnified for employment-related expenses in violation of California Labor Code § 2802 and California's Unfair Competition Law (Bus. and Prof. Code § 17200 *et seq*) ("UCL"). Before the Court is Defendant Stryker's Motion for Summary Judgment. *See* ECF No. 34. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing on this Motion set for May 1, 2014, at 1:30 p.m. The Case Management Conference scheduled for May 1, 2014, at 1:30 p.m. remains as set. The Court, having considered the record in this case, applicable law, and parties' briefs, DENIES Stryker Corporation's Motion for Summary Judgment.

1

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

## I.     BACKGROUND

### A.     Factual Background

Trosper was employed by Howmedica as a Sales Representative from approximately November 2008[1] until May 2011. ECF No. 1, ¶ 9 (Complaint, hereinafter "Compl."). Trosper worked in the Stryker Craniomaxillofacial division ("Stryker CMF") of Howmedica. ECF No. 36-1 ("Trosper Depo.") at 52:12-15. Howmedica is a wholly-owned subsidiary of Stryker, and both corporations are in the business of manufacturing and marketing medical devices. Compl. ¶¶ 10-11; ECF No. 34-1 ¶ 4. In the Complaint, Trosper claims he incurred numerous expenses in the course of his employment and for the benefit of his employer, including costs associated with operating his personal vehicle and mobile phone; use of a fax machine, landlines, office space, office supplies, internet access, storage, entertainment; dining with clients; and travel expenses (such as airfare, lodging, and local transportation). Compl. ¶¶ 20-21.

Trosper alleges that during the Class Period[2] Stryker and Howmedica did not have a policy providing for the reimbursement of expenses to putative class employees, and Defendants' existing policy expressly prohibited employee reimbursement for business expenses. *Id.* ¶ 24. Trosper alleges that in February 2011 and October 2012, Defendants changed their policy to allow reimbursement of certain expenses to some employees. *Id.* ¶¶ 25-26. The putative class consists of "all person who have been, or currently are, employed by Defendants in California during the Class Period as 'Sales Representatives.'" *Id.* ¶ 1.

Trosper contends that Defendants' policy prohibiting expense reimbursement violated California Labor Code § 2802, which provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." *Id.* ¶¶ 23, 39-40. Moreover, Trosper alleges that Defendants'

---

[1] Trosper's declaration states he was an employee from April 2007 until May 2011. ECF No. 35-3 ("Trosper Decl.") ¶ 1. Trosper's opposition also states his employment began in April 2007. ECF No. 35, Opp'n at 1. This factual discrepancy between the Complaint, on the one hand, and Trosper's declaration and opposition on the other, is not dispositive of the matters at issue in Stryker's motion.

[2] Trosper defines the Class Period as "four years preceding the filing of this complaint through the date that Defendants changed their reimbursement policies to comply with California law." Compl. ¶ 2.

2

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

policy constituted an "unfair" and "unlawful" business practice in violation of the UCL. *Id.* ¶¶ 45-48.

### B. Procedural History

Trosper filed his Complaint against Howmedica and Stryker on February 12, 2013. ECF No. 1. Defendants answered on March 29, 2013, ECF No. 16. On October 28, 2013, the parties filed a joint statement indicating that they disagreed as to whether Stryker was a properly named defendant and that Defendants planned on filing a motion for summary judgment seeking to dismiss Stryker from the case. ECF No. 31. Stryker filed the instant motion on January 23, 2014, ECF No. 34 ("Mot."), and Trosper filed his opposition on February 6, 2014. ECF No. 35 ("Opp'n"). On February 13, 2014, Stryker filed a reply. ECF No. 36 ("Reply"). The parties also filed various declarations in support of their arguments. In support of its motion for summary judgment and its reply, Stryker filed the Michelle Shinevare Declaration, ECF No. 34-1 ("Shinevare Decl."), and the Soo Cho Declaration, ECF No. 36-1 ("Soo Cho Decl."). In support of Plaintiff's opposition, Plaintiff filed the Trosper Declaration, ECF No. 35-3 ("Trosper Decl."), and the Hanna Raanan Declaration, ECF No. 35-1 ("Raanan Decl.").

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id*. at 249-50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id*. at 1103.

## III. DISCUSSION

### A. Stryker's Evidentiary Objections to Trosper's Opposition

In its Reply in support of the instant Motion, Stryker raises various evidentiary objections to exhibits introduced by Trosper in support of his opposition. *See generally* Reply. The Court addresses each of Stryker's objections throughout the analysis below.

### B. Whether Stryker is Liable as Trosper's Employer under the "Integrated Enterprise" Test

Stryker moves for summary judgment on all of Trosper's claims on the basis that Trosper has failed to produce evidence demonstrating the existence of an employment relationship between Trosper and Stryker. Mot. at 1-2. Stryker argues that if no employment relationship existed between Stryker and Trosper, Stryker cannot be held liable. *Id.* Construing all the evidence in favor of Trosper, the non-moving party, as this Court must do at the summary judgment stage, the Court concludes that Trosper's evidence presents a genuine issue of material fact regarding the existence of an employment relationship between Trosper and Stryker. The Court rejects Stryker's argument that Stryker is, as a matter of law, not Trosper's employer and thus not liable for Howmedica's acts because Trosper has produced evidence sufficient to support a finding by a reasonable jury that Stryker was in fact Trosper's employer. Accordingly, the Court DENIES Stryker's Motion for Summary Judgment.

Trosper alleges that Stryker and Howmedica, collectively as his employers, violated California Labor Code § 2802, which provides that that "[a]n employer shall indemnify his or her

4
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code ¶ 2802; Compl. ¶¶ 39-40. California courts have held that inherent in raising such a claim is the requirement that a plaintiff sue his or her actual employer. *See, e.g.*, *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10 (2007) (determining whether employment relationship existed between plaintiff and defendant prior to adjudicating a § 2802 claim).[3]

Trosper argues that Stryker is liable as his employer under the "integrated enterprise" test as set forth in *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727 (1998), *overruled on other grounds by Reid v. Google*, 50 Cal. 4th 512 (2010). Opp'n at 6. Under the "integrated enterprise" test, two corporations, here Stryker and its subsidiary Howmedica, may be treated as a single employer for purposes of liability. *Laird*, 68 Cal. App. 4th at 737. While "this test is most often applied in the context of claims arising under Title VII and the California Fair Employment and Housing Act," and while California law is unsettled as to what precise test regarding the existence of an employer-employee relationship applies to claims under California Labor Code § 2802, California courts as well as federal courts in the Ninth Circuit have applied the "integrated enterprise" test to claims arising from alleged violations of the California Labor Code. *See, e.g.*, *Kenny v. Regis Corp.*, No. 06-07521, 2008 WL 686710, at *3 (N.D. Cal. Mar. 10, 2008); *Huse v. Auburn Honda*, No. 04-0227, 2005 WL 1398521, at *3 (E.D. Cal. June 10, 2005) (employing the integrated enterprise test to determine whether a defendant was an employer within the meaning of the California Labor Code); *Serrano v. 180 Connect, Inc.*, No. 06-1363, 2006 WL 2348888, at *2 (N.D. Cal. Aug. 11, 2006) (employing the integrated enterprise test in an action arising from

---

[3] Trosper also alleges that Stryker violated the unfair and unlawful prongs of the UCL. Compl. ¶ 46. Stryker moves for summary judgment on the UCL claim also on the basis that an employer-employee relationship must be shown. Mot. at 1-2. Stryker is correct that an employer-employee relationship must be shown for Trosper to sue Stryker on the UCL claim. With respect to the UCL's "unlawful" prong, that prong makes violations of *other* laws actionable under the UCL. *Herskowitz v. Apple, Inc.*, 940 F.Supp.2d 1131, 1145 (N.D. Cal. 2013). Thus, because a violation of California Labor Code § 2802 is a predicate for stating a cause of action under the UCL's unlawful prong, an employer-employee relationship need be shown to bring the UCL claim against Stryker. With respect to the UCL's "unfair" prong, the unfair practice alleged in this case—an *employer's* failure to compensate an employee for expenses incurred in the course of employment—requires that an employer-employee relationship exists to prove the "injury in fact" and "lost money or property" required to bring any claim under the UCL. Cal. Bus. & Prof. Code § 17204.

5

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

alleged California Labor Code violations), *rev'd on other grounds* 478 F.3d 1018 (9th Cir. 2007). Courts have also applied the integrated enterprise test in the context of addressing UCL claims predicated upon California Labor Code violations. *See Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1238 (C.D. Cal. 2007).

Under *Laird*, in determining whether two entities are liable as a single employer or an "integrated enterprise," courts consider four factors: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Laird*, 68 Cal. App. 4th at 737. "Under this test, common ownership or control alone is never enough to establish parent liability." *Id.* at 738. Because corporate entities are presumed to exist separately, "the corporate existence form will be disregarded only when the ends of justice require this result." *Id.* at 737. As a result, "an employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet[.]" *Id.*[4]

Below, the Court analyzes each of the *Laird* factors, and concludes that Trosper has presented sufficient evidence for a reasonable trier of fact to conclude that Stryker and Howmedica are "integrated enterprises" and thus that Stryker was Trosper's employer.

### 1. Centralized Control of Labor Relations

The Court first considers the "centralized control of labor relations" factor. "Although courts consider the four factors together, [and no one factor is dispositive], they often deem centralized control of labor relations to be most important." *Id.* at 738. "The critical question is, [w]hat entity made the final decisions regarding employment matters related to the [clamaint]? . . . To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary." *Id.* (internal quotation marks and citations omitted). In *Laird*, the court held that this

---

[4] In *Laird*, the California Court of Appeal for the Third Appellate District affirmed summary judgment for a defendant parent corporation that was sued by Anne Laird – the former employee of the parent company's wholly owned subsidiary – for violations of California's Fair Housing and Employment Act ("FHEA"). *Laird*, 68 Cal. App. 4th at 741. The court determined the parent corporation was not Laird's employer after evaluating four factors of the "integrated enterprise" test: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Id.*

6

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

factor weighed greatly in favor of the defendant parent company, given that the subsidiary's control over its own employment decisions was "essentially undisputed." *Id.* at 739. The court noted that all of the plaintiff's employment paperwork designated her employer to be the subsidiary, not the parent. *Id*. The employee handbooks the plaintiff received explicitly stated she was a subsidiary employee. *Id*. Furthermore, the subsidiary provided all of her W-2 forms. *Id*. Finally, the plaintiff admitted in her deposition that the supervisors who fired her were employees of the subsidiary, not the parent company. *Id*. Below, the Court considers the evidence relevant to this factor and concludes Trosper has presented evidence that raises a genuine issue of material fact as to whether this first factor weighs in favor of a finding that Stryker is Trosper's employer.

In its motion for summary judgment, Stryker argues it did not participate in any of the day-to-day employment decisions affecting Trosper or any putative class members, and that Stryker "does not employ any Sales Representatives in California." Mot. at 2; *id.* at 3 ("Stryker does not currently, and has not ever during the putative liability period, employed any Sales Representatives in California."); Shinevare Decl. ¶¶ 8-10, 12.[5] Stryker also claims that Howmedica is a completely separate legal entity, with separate headquarters, finances, accounting departments, payrolls, W-2 forms, and federal tax identification numbers. Mot. at 3 (citing Shinevare Decl. ¶¶ 6-7). Stryker further notes that Stryker CMF, the division in which Trosper was employed, is a division of Howmedica, not Stryker. Mot. at 2-3; Shinevare Decl. ¶ 5, 10. Howmedica employees are paid from Howmedica funds, not Stryker funds. Mot. at 3; Shinevare Decl. ¶ 7. Trosper's employment offer letter stated that he was hired to work for Stryker CMF. Shinevare Decl. Ex. 1 at 1 (noting he would be a "Stryker CMF" employee). His employment agreement stated it was between "Howmedica Leibinger, Inc, [doing business as] Stryker CMF" and Trosper, and that Trosper was bound to Stryker CMF's policies. *Id.* Ex. 3 at 1, 4. Stryker CMF conducts its own performance review of its employees, *see* Mot. at 3; Shinevare Decl. Ex. 4 (Stryker CMF Sales Employee Performance Review); Shinevare Decl. ¶ 10, and Stryker CMF implemented a Business Travel and Entertainment Expenses Policy in October 2012 to sales representatives working in the State of

---

[5] Michelle Shinevare is the Senior Manager of Human Resources and Payroll Shared Services for Stryker. Shinevare Decl. ¶ 1.

7

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

California, Mot. at 4; Shinevare Decl. Ex. 5("Stryker CMF T&E Reimbursement Policy for All Sales Reps working in the State of California"); Shinevare Decl. ¶ 11 (stating that this policy was implemented by Stryker CMF and not Stryker). Finally, Stryker claims Howmedica makes all decisions related to hiring, disciplining, and terminating its employees. Mot at 3; Shinevare Decl. ¶ 10.

Stryker's arguments notwithstanding, the Court finds Trosper's evidence presents a genuine issue of material fact as to whether the "centralized control of labor relations" factor supports a finding that Stryker was Trosper's employer. First and foremost, Trosper has cited to a Western District of Michigan case filed by Stryker and Howmedica as joint plaintiffs against former Stryker CMF employees.[6] Raanan Decl. Ex. K (Michigan Complaint, hereinafter "Mich. Compl."); Opp'n at 3. In the Michigan Complaint, Stryker explicitly holds itself out as the employer of former Stryker CMF sales representatives and managers in Louisiana and New York. Mich. Compl. at 1 (noting that allegations would refer to Stryker and Howmedica "collectively" as "Stryker" throughout the complaint); ¶¶ 34-35 ("[Defendant] began *working for Stryker* . . . as a Sales Representative in the New Orleans territory-East Division. Prior to [Defendant's] *employment with Stryker*, [Defendant] executed the Agreement . . .") (emphases added). Further, it is worth noting that in the Michigan Complaint, Stryker, along with Howmedica, brought breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with contract claims against its former employees based, in part, on alleged violations of one of the very

---

[6] Stryker objects to Trosper's introduction of the Michigan Complaint under Federal Rules of Evidence 402 and 901. Reply at 1 n.2. First, Stryker argues that the compliant is "unrelated to, and not probative as to the existence of, an employment relationship between Stryker and any California Sales Representatives." *Id.* The Court disagrees. In the Michigan Complaint, Stryker makes multiple references to the former Stryker CMF employees as "Stryker employees," and the defendants in that case appear to be employed in the same Stryker CMF division as Trosper, but in different states. These facts easily clear the very low bar for relevancy set forth in Rule 402. Second, Stryker claims the Complaint is improperly authenticated per Rule 901. The Court disagrees. The Michigan Complaint is available via Internet search and on PACER, a reliable, publicly accessible repository for federal court documents. Furthermore, the Michigan Complaint has been prepared by the same law firm representing Stryker in this case, which suggests that Stryker should be certain as to the veracity of this filing. Court documents are subject to judicial notice. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of court documents already in the public record and documents filed in other courts). Stryker also objects on procedural grounds, arguing that Trosper should have filed a Request for Judicial Notice with respect to the Complaint. However, this Court has discretion to sua sponte judicially notice documents. Fed. R. Evid. 201(c)(1) ("The court may take judicial notice on its own").

agreements that Trosper signed in this case – the Stryker "Employee Confidentiality and Intellectual Property Agreement." *See* Mich. Complaint ¶¶ 67-68; Trosper Decl. Ex. A.[7] [8] While Stryker is correct that "there is a strong presumption that one corporate entity is not the employer of a separate, related entity's employees," Mot. at 5 (citing *Laird*, 68 Cal. App. 4th at 737), *Laird* goes on to hold that the corporate form can and should be disregarded "when the ends of justice require this result." *Laird*, 68 Cal. App. 4th at 737; *accord Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985). In this case, a reasonable jury could find that Stryker's concession in the Michigan case that Stryker "employ[ed]" Stryker CMF sales representatives should be viewed as one consideration weighing heavily in favor of the conclusion that Stryker was Trosper's employer. This is because a jury could find that justice would not be served if Stryker were allowed to wield its parent corporation resources in another forum against Stryker CMF employees but simultaneously use the separate parent-subsidiary corporate form as a shield against liability in a lawsuit by a similarly situated Stryker CMF employee in California. Accordingly, the Court finds the Michigan Complaint to be probative evidence raising a genuine issue of material fact as to whether Stryker is the employer of Stryker CMF sales representatives such as Trosper.[9]

---

[7] Furthermore, although in the action pending before this Court Stryker describes Stryker CMF as a division of Howmedica, *see* Mot. at 1-2, Stryker describes Stryker CMF in the Michigan Complaint as a "division" of "Stryker," which the Michigan Complaint defines as the collective word for both Stryker and Howmedica. *See* Mich. Compl. ¶ 24 ("Stryker, through its CMF division and NSE business unit, is a global leader in the development, manufacture, and sale of medical devise sales."); *id.* at 1 (referring to Stryker and Howmedica "collectively" as "Stryker"). At the very least, this description in the Michigan Complaint casts doubt on Stryker's claim in this case that Stryker and Stryker CMF are "completely separate entit[ies]." Mot. at 2.

[8] Stryker's statements regarding the existence of an employment relationship with Stryker CMF employees in the Michigan Complaint are considered judicial admissions in the Michigan case under both Sixth Circuit and Ninth Circuit law. *See United States. v. Burns*, 109 Fed. App'x 52, 58 (6th Cir. 2004) ("We have discretion to consider a statement made in a brief to be a judicial admission, binding on both this court and the trial court.") (citing *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003)); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). The Court finds that Stryker's admission in the Michigan case is highly probative at the very least as to whether Stryker has essentially conceded in the instant case that any person who signed the Employee Confidentiality and Intellectual Property Agreement was a Stryker employee.

[9] As an aside, the Court notes that the fact that Stryker sought to enforce, through the Michigan Complaint, its ability to control employees' access to Stryker's confidential documents and intellectual property suggests that Stryker exercises a level of control over Howmedica that extends beyond the typical distant relationship between a parent and subsidiary. *See Laird*, 68 Cal. App. 4th

9
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

In addition to the Michigan Complaint, the Court finds that other evidence also raises a genuine issue of material fact as to whether Stryker controlled the day-to-day employment decisions at Howmedica and specifically its Stryker CMF subdivision. *Laird*, 68 Cal. App. 4th at 738. The Court acknowledges that Michelle Shinevare, the Senior Manager of Human Resources and Payroll Shared Services for Stryker, testified in her declaration that "Howmedica and its various divisions maintain their own employee handbooks, trainings, and internal employment policies," Shinevare Decl. ¶ 10. The Court also notes the existence in the record of the "Stryker Orthopaedics Employee Handbook," which is a Howmedica policy.[10] However, Trosper has introduced multiple policies that were applicable to Trosper and related to his employment that appear to have been promulgated by Stryker directly, not Howmedica or Stryker CMF. For example, Trosper was required to sign a "Stryker Corporation Code of Conduct" policy as a condition of his employment. Trosper Decl. Ex. B (also signed by the CEO of Stryker). The Code of Conduct states it "establishes policies and procedures that are intended to guide employees in the performance of their duties and responsibilities and ensure compliance with the Company's commitment to ethical and lawful conduct." *Id.* at 1.[11] Notably, Trosper's signature indicated that he "underst[ood] that compliance with the Code of Conduct is a condition of [his] continued employment *with Stryker Corporation* and [he] will abide by and support the policies set forth in [Stryker's] Code of Conduct." *Id.* at 4 (emphasis added). On the signature page for the Code of Conduct, Trosper provided his "division" as "CMF," without any reference to Howmedica. *Id.* at 4.

---

at 738 ("What a plaintiff must show, rather, is that the parent has exercised control 'to a degree that exceeds the control normally exercised by a parent corporation.'") (internal citations omitted).

[10] The Court agrees with Stryker that the "Stryker Orthopaedics Employee Handbook," introduced by Trosper, is a Howmedica policy, not a *Stryker* policy. Reply at 4. Stryker HR Director Michelle Shinevare stated in her deposition that Stryker Orthopaedics and Howmedica Osteonics are different names for the same entity. *See* Raanan Decl. Ex. J, 30:1-4; Reply at 4. The Court overrules Stryker's evidentiary objections under Rules 402 and 701 to Trosper's statement, Trosper Decl. ¶ 5, that "During [his] time at Stryker CMF, [he] understood that Howmedica Osteonics was a division of Stryker Corporation and synonymous with Stryker Corporation's Orthopedic Division" because Trosper's statement mirrors Stryker manager Michelle Shinevare's own deposition testimony. Reply at 4 n.4.

[11] The Code notes that "company officers . . . will be required periodically to confirm in writing that . . . they are not aware of any violations of these policies or have properly reported all violations. . . . Violation of a policy, retaliation against any individual for reporting a violation, or failure to otherwise comply with these policies will not be tolerated and will result in disciplinary action, including termination of employment where appropriate." *Id.*at 3.

10
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Trosper also signed an Employee Confidentiality and Intellectual Property Agreement between "Stryker Corporation, including its subsidiaries, operating divisions, and affiliates" and Trosper, which suggests Stryker had a key role at least in defining Trosper's confidentiality obligations as he carried out his work duties. *Id.* Ex. A. Trosper also signed a "Notice to All Employees" from "Stryker Corporation" regarding Stryker's affirmative action policy benefitting veterans. *Id.* Ex. C. Finally, Trosper has introduced "Corporate Accounting Policy #12, Business Travel and Entertainment Expenses," effective April 1, 2007, signed by Stryker's six managing executives. Raanan Decl. Ex. G. This policy "sets forth minimum guidelines for Stryker divisions and subsidiaries to follow when authorizing and reimbursing business travel and entertainment expenses." *Id.*[12] The aforementioned policies all prominently feature either the Stryker logo or the words "Stryker Corporation," not the words "Stryker CMF" or the Stryker CMF logo present on some of Trosper's other employment paperwork. *See, e.g.*, Shinevare Decl. Exs. 1 (offer letter); 2 (termination letter); 5 ("Stryker CMF T&E Reimbursement Policy for All Sales Reps working in the State of California"). The Court concludes that these policies, in combination, provide a basis for a reasonable jury to conclude that Stryker controlled day-to-day employment decisions at Howmedica.[13]

---

[12] The sole substantive claim in this case centers on reimbursement of employee expenses. The Court notes that Stryker has failed to present any evidence that Howmedica actually controlled "day-to-day" decisions with respect to employee expense reimbursement during Trosper's employment. The only policy in the record promulgated by Stryker CMF or Howmedica that speaks directly to the issue of employee expense reimbursement was issued in October 2012, over one year *after* Trosper stopped working for Stryker CMF and thus is inapplicable to him. *See* Shinevare Decl. Ex. 5 ("Stryker CMF T&E Reimbursement Policy for All Sales Reps working in the State of California"); Shinevare Decl. Ex. 2 (termination letter indicating his job was terminated as of May 19, 2011). On the other hand, Trosper has presented evidence of at least two Stryker-promulgated expense reimbursement policies that very well may have been in existence during the course of his employment, *see, e.g.*, Raanan Decl. Ex. G (Corporate Accounting Policy #12 effective April 2007); Compl. ¶ 1 (Trosper began working at Stryker CMF in approximately November 2008); *see also* Trosper Decl. ¶ 7 and Ex. F (powerpoint presentation Trosper testified he was given in training session regarding Stryker's policies regarding expense reimbursement policies for business events with healthcare providers). The powerpoint notes that employees were expected to know these policies. Trosper Decl. Ex. F at 2.

[13] The Court further notes that the record includes a newsletter titled "West Region News" apparently sent out by Stryker (because the Stryker logo is on the document), in which Stryker congratulated its Sales team on a good year, and specifically congratulated Trosper as the number one salesperson. Trosper Decl. Ex. E; Trosper Decl. ¶ 6. Even if this evidence does not suggest Stryker was controlling the day-to-day employment decisions at Stryker CMF, it at least suggests that Stryker was involved in overseeing the work achievements of sales representatives like

11

Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Stryker minimizes the impact of these policies, first arguing they "are actually Howmedica policies," and second that the policies do not reveal that Stryker management had any control over Howmedica's day-to-day employment decisions. Reply at 6, 9. The Court disagrees with Stryker's characterization of the evidence. First, it is not at all clear, as Stryker argues, that the policies are "Howmedica" policies because as noted above, many of the policies prominently feature either a Stryker logo or the words "Stryker Corporation" throughout the policy. *See, e.g.*, Trosper Decl. Ex. A (Stryker Employee Confidentiality and Intellectual Property Agreement); *id.* Ex. B (Stryker Corporation Code of Conduct); *id.* Ex. C (Stryker Corporation Notice to All Employees); Raanan Decl. Ex. G (Stryker Corporate Accounting Policy #12). Second, the Court is not convinced by Stryker's implicit suggestion that only decisions involving hiring, firing, and compensation—and *not* decisions regarding expense reimbursement policies, confidentiality agreements, or "codes of conduct"—are the types of decisions that are relevant to the "centralized control of labor relations" factor. Mot. at 10; Reply at 6-7. Stryker has not cited any binding authority mandating such a "narrow" view regarding what kinds of specific employment decisions are relevant to a court's evaluation of the first factor.

In light of the representations made by Stryker in the Michigan Complaint and Trosper's evidence regarding policies promulgated by Stryker specifically, the Court concludes Trosper has raised a genuine issue of material fact as to whether the "centralized control of labor relations" factor weighs in favor of finding Stryker is Trosper's employer. A reasonable jury could conclude this factor weighs in favor of finding that Stryker and Howmedica are integrated enterprises such that Stryker can be held liable as Trosper's employer.

### 2. Interrelation of Operations

The Court now addresses the second factor – i.e., interrelation of operations. To make a sufficient showing of "interrelation of operations" on a defendant's summary judgment motion, the plaintiff must show that the parent company has exercised control over the subsidiary "to a degree that exceeds the control normally exercised by a parent corporation." *Laird*, 68 Cal. App. 4th at

---

Trosper. Stryker objects to this newsletter on the ground that it is irrelevant, Reply at 7 n.6, but the Court overrules that objection.

738 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)). Plaintiff must do more than demonstrate that the parent "benefits from the subsidiary's work" because "such a showing would create a triable issue of material fact in every case." *Id.* at 739. In *Laird*, the court found Laird had failed to introduce evidence to satisfy this prong, and provided examples of evidence that would help to show that the operations of the parent and subsidiary were interrelated: "She did not show, for instance, that the [the parent corporation] kept [the subsidiary's] books, issued its paychecks, or paid its bills," or that "the two operations share employees, . . . headquarters, or office space." *Id.* Below, the Court concludes Trosper has presented evidence that raises a genuine issue of material fact as to whether this factor weighs in favor of finding that Stryker is Trosper's employer.

First, with respect to evidence of keeping the subsidiary's "books," Stryker *concedes* that it provides human resources support such as payroll processing services and administrative data entry for Stryker CMF. Mot. at 4; Shinevare Decl. ¶ 13. Stryker's additional concession that it is *not* compensated for performing these duties, Reply at 5 n.5, further supports a finding of interrelatedness of operations between Stryker and Howmedica. *C.f. Kenny*, 2008 WL 686710, *4 (noting, in support of its conclusion that Plaintiff had shown no evidence of "interrelation of operations" between the subsidiary and parent, that "[subsidiary] is charged for all services provided by [the parent corporation's] employees."). Although the Court agrees with Strkyer that this evidence is not dispositive of the Court's "integrated enterprise" inquiry in light of the uncontroverted evidence that Stryker and Howmedica otherwise maintain separate finances, *see* Reply at 5; Shinevare Decl. ¶¶ 6-7, the Court nonetheless considers the existence of this payroll processing relationship to be at least evidence probative of an "interrelation of operations" between Stryker and Howmedica.

Second, there is some evidence that Stryker and Stryker CMF may share "employees, headquarters, or office space." *Laird*, 68 Cal. App. 4th at 739. Notably, the evidence raises at least a plausible inference that the two companies share two managing-level employees. First, it appears that Mike VanVleet may be a shared employee of Stryker CMF and Stryker. Notably, Trosper's termination letter – specifically referencing his termination from *Stryker CMF* – is signed by Mike

13
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

1 VanVleet in his capacity as "Director, Human Resources and Kalamazoo Operations" with a return
2 address in Portage, Michigan.[14] Shinevare Decl. Ex. 2 (termination letter). Stryker is headquartered
3 in Kalamazoo, Michigan, *see* Shinevare Decl. ¶¶ 3-4, while the record suggests Stryker CMF is
4 headquartered in Portage, Michigan. *See id.* Exs. 1, 2 (Trosper's employment offer letter and
5 termination letter *from Stryker CMF* indicating a return address in Portage, Michigan). There is
6 thus evidence that Mike VanVleet is both a Stryker CMF employee (because he signed the letter
7 referencing termination of Trosper's employment from *Stryker CMF* from Portage, Michigan) *and*
8 a Stryker employee, for he is Director of "Kalamazoo Operations" (Kalamazoo is where the
9 *Stryker* headquarters is located). While the Court acknowledges that this evidence does not
10 conclusively prove that VanVleet is a shared employee, Stryker has not presented any evidence
11 clarifying VanVleet's role at Stryker or Stryker CMF, or clarifying whether Stryker CMF also
12 operates out of Kalamazoo, Michigan like Stryker does. Stryker, the moving party on summary
13 judgment, has the burden of demonstrating the absence of a genuine issue of material fact for trial.
14 *Celotex*, 477 U.S. at 323. There is also evidence suggesting Associate Human Resources Manager
15 Melissa Lewis[15] is a "shared employee" of Stryker and Stryker CMF. Notably, there is evidence
16 Lewis is a Stryker employee, as Trosper testifies that Lewis signed and executed Trosper's
17 Confidentiality Agreement between Trosper and "Stryker Corporation, including its subsidiaries,"
18 and testifies that she did so on behalf of "Stryker Corporation." *See* Trosper Decl. ¶ 3; *id.* Ex. A at
19 1, 5 (confidentiality agreement between Trosper and "Stryker Corporation, including its
20 subsidiaries") (Lewis' signature on confidentiality agreement); Opp'n at 2, 8. Indeed, the
21 Confidentiality Agreement itself states that Trosper had "read this agreement and ha[d] had an
22 opportunity to ask *representatives of Stryker* questions about it." Trosper Decl. Ex. A at 5
23 (emphasis added). Presumably, Lewis, who signed and executed the agreement, was the Stryker
24 representative to whom Trosper could direct his questions about the agreement. However, there is
25 also evidence that Lewis was an employee of Stryker CMF and Howmedica. Trosper testified
26 Lewis had signed Trosper's employment offer letter *from Stryker CMF* and did so in her capacity

---

[14] It is unclear from the record whether VanVleet is a director of Stryker or Stryker CMF.
[15] It is unclear from the record whether Lewis' title is Associate Human Resources Manager for Stryker or Stryker CMF.

14
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

1    as associate manager for Human Resources for Howmedica. Opp'n at 2; Trosper Decl. ¶ 3.[16]

2    Indeed, the offer letter itself shows that Lewis signed the letter in her capacity as "Associate

3    Manager, Human Resources" "[o]n behalf of Stryker CMF"). Shinevare Decl. Ex. 1 at 1-2.

4    The Court thus finds that Trosper has presented evidence that raises a genuine issue of

5    material fact as to whether this factor weighs in favor of finding that Stryker is Trosper's employer.

6        3.    **Common Management**

7    The Court now addresses the third factor under the integrated enterprise test—common

8    management. The *Laird* court held that Laird had failed to show the parent and subsidiary had any

9    degree of common management, as she had "offered no evidence that anyone served as a manager

10   of both corporations." *Laird*, 68 Cal. App. 4th at 740. The court also reasoned Laird should have

11   introduced evidence that at least one manager of the parent corporation made or influenced a "day-

12   to-day managerial decision" of the subsidiary, and further noted, "[n]or did [Laird] show that any

13   manager from either corporation was ever transferred to the other." *Id.* Below, the Court considers

14   the evidence relevant to this factor and concludes Trosper has presented sufficient evidence that

15   raises a genuine issue of material fact as to whether this factor weighs in favor of finding that

16   Stryker is Trosper's employer.

17   Trosper has introduced evidence similar to what the *Laird* court envisioned as satisfying

18   this prong of the "integrated enterprise" test. *See Laird*, 68 Cal. App. 4th at 740. First, Trosper has

19   offered evidence that at least two people served as a manager of both Howmedica and Stryker. In

20   her deposition, Senior Manager of Human Resources and Payroll Shared Services for Stryker,

21   Michelle Shinevare, identifies David Furgason and Jeanne Blondia as officers of Howmedica.

22   Raanan Decl. Ex. J, 26:24-28:6 (identifying Ferguson as Vice President of Tax at Howmedica and

23   identifying Blondia as an "officer"). Yet Furgason is *also* listed on the "Stryker Management" page

---

[16] Stryker objects on the basis of Rules 602 and 701 to Trosper's testimony that Michelle Lewis signed his employment agreement "on behalf of Howmedica and [executed] his confidentiality agreement on behalf of Stryker Corporation." Reply at 10 n.9 (referring to Trosper Decl. ¶ 3). Stryker's personal knowledge objections are overruled. Trosper has sufficient personal knowledge, as a signatory of both the Confidentiality Agreement and the employment offer letter, to assert at least his understanding of Lewis' role in the execution of the documents.

for Stryker's website, www.stryker.com, as "Vice President, Tax", and Blondia is *also* listed as "Vice President and Treasurer." *Id.* Ex. L; Raanan Decl. ¶ 7.[17][18] Further, there is evidence in the record, *see supra* Part III.B.2, to support the inference that Mike VanVleet and Melissa Lewis – as managers of the parent corporation Stryker – made or influenced "day-to-day managerial decision[s]" of Howmedica. *Laird*, 68 Cal. App. 4th at 740. As noted above, Mike VanVleet has the title of "Director, Human Resources and Kalamazoo Operations," suggesting he is a *Stryker* director because Kalamazoo, Michigan is the place where the *Stryker* headquarters is located, while the record suggests Howmedica is headquartered in New Jersey[19] and Stryker CMF is headquartered in Portage, Michigan. Yet VanVleet signed the letter which references Trosper's employment termination from *Stryker CMF*. The combination of these circumstances suggests that Stryker may have had at least some part in influencing or making certain managerial decisions at Stryker CMF. Similarly, Associate Human Resources Manager Melissa Lewis, who apparently has authority to act as a *Stryker* representative, as she did when signing and executing the Confidentiality Agreement with Trosper, also signed Trosper's employment offer letter which discusses his employment with *Stryker CMF*. This too suggests that representatives from Stryker had at least some part in influencing or making certain managerial decisions at Stryker CMF, or at the very least that human resources functions at Stryker and Stryker CMF were intermingled to a certain extent.[20][21]

In light of the foregoing, the Court finds Trosper has presented sufficient evidence for a reasonable jury to conclude that this factor weighs in favor of finding that Stryker is Trosper's

---

[17] The record makes clear that Howmedica does not have its own website. Raanan Decl. ¶ 6. A search for www.howmedica.com directs the user to the Stryker webpage for orthopedic devices. *Id.* Stryker objects to Trosper's assertion that Howmedica does not maintain its own website "on the grounds that this purported evidence" is "irrelevant." Reply at 13 n.11. The Court overrules this objection as moot because the Court does not rely on the fact that Howmedica does not have its own website in reaching its conclusion on Stryker's motion.
[18] Stryker does not directly address whether Blondia and Furgason are managers of both Howmedica and Stryker, but simply notes that "Plaintiff provides no evidence as to the roles these individuals play[.]" Reply at 9-10.
[19] Howmedica is headquartered in Mahwah, New Jersey. Shinevare Decl. ¶¶ 3-4.
[20] In light of the foregoing evidence, the Court is not convinced by Stryker's assertion that Stryker had absolutely "no input on hiring and firing" at Howmedica. Mot. at 10.
[21] Stryker has no persuasive rebuttal to these arguments except to say that although Stryker and Howmedica share a "small number" of employees, Mot. at 8, "Trosper can again point to no evidence proving common management between the two corporate entities." *Id.*

16
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

employer under the "integrated enterprise" test.[22]

### 4. Common Ownership or Financial Control

Finally, the Court addresses the fourth and final factor – common ownership or financial control. The mere fact of common ownership or financial control, without more, is insufficient to raise a triable issue of fact under the integrated enterprise test and thus hold that a parent corporation must be liable for the illegal acts of its subsidiary on the theory that the two corporate entities constitute a single employer. *Laird*, 68 Cal App. 4th at 739-40. Courts have recognized this factor as being the least important of the four. *See, e.g.*, *Pearson v. Component Tech Corp.,* 247 F.3d 471, 494 (3rd Cir. 2001) (noting that common ownership is "typically referred to as the 'least important' of the factors"); *Serrano*, 2006 WL 2348888, *5. Further, because this factor is not dispositive of the existence of an integrated enterprise, courts have even refrained from addressing this factor entirely. *See, e.g.*, *Ruiz*, 2011 WL 3300098, at *3-4.

Here, as in *Laird* where the existence of common ownership was not denied by the parent corporation, Stryker does not deny that Howmedica is a wholly-owned subsidiary of Stryker, and thus does not deny that Stryker and Howmedica are commonly owned. However, Stryker does provide persuasive evidence that Stryker does not exercise any financial control over Howmedica. Stryker HR Director Michelle Shinevare testifies that the two corporations have separate accounting departments, maintain separate financial records, maintain separate payroll records, issue separate W-2 forms, and have separate federal tax identification numbers. *See* Shinevare Decl. ¶¶ 6-7; *see also* Mot. at 3. Howmedica employees are paid from Howmedica funds, not Stryker funds. *Id.* at 7. Trosper does not appear to contest whether Stryker exercises any financial control over Howmedica. Opp'n at 8. The Court concludes the record supports a finding of common ownership, but does not support a finding of common financial control. However, because this Court, like other courts, concludes that this factor is minimally probative of whether Stryker and Howmedica are "integrated enterprises," Stryker's evidence demonstrating no common

---

[22] Trosper requests that the hearing on Defendant's motion be continued to "allow reasonable discovery into the duties of the shared executives if the court finds that the mere existence of common managers does not support a finding of a genuine issue of material fact." Opp'n at 3 n.8. In light of how the Court concludes the "common management" factor weighs in favor of finding an employment relationship, the Court denies Trosper's request as moot.

17
Case No.: 13-CV-0607-LHK
ORDER DENYING DEFENDANT STRYKER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

financial control between Howmedica and Stryker does not convince the Court to conclude as a matter of law that Stryker is not Trosper's employer under the "integrated enterprise" test. Rather, the Court simply finds that Stryker's concession of common ownership provides at least some support for the Court's conclusion that a reasonable jury could find Stryker was in fact Trosper's employer. The jury will be entitled to consider Stryker's evidence of no common financial control at trial when deciding whether this fourth factor weighs in favor of finding an employment relationship between Trosper and Stryker.

### 5. Conclusion

The Court finds that Trosper has introduced evidence sufficient to create a genuine issue of material fact as to the existence of an employment relationship between Trosper and Stryker. In support of the first and most important prong of the integrated enterprise test—centralized control of labor relations—Trosper has introduced not only a judicial admission by Stryker that it is a direct employer of Howmedica employees in the same sales position as Trosper, but also points to multiple policies, promulgated by Stryker, that bind employees like Trosper. This included the Code of Conduct which required Trosper to sign and acknowledge that he "underst[ood] that compliance with the Code of Conduct is a condition of [his] continued *employment with Stryker Corporation* and [he] will abide by and support the policies set forth in [Stryker's] Code of Conduct." Trosper Decl. Ex. B at 4 (emphasis added). Trosper also introduced evidence sufficient to satisfy the second prong of the integrated enterprise test—interrelation of operations—by pointing out common officers and payroll functions. A reasonable jury could also find that the third factor of the integrated enterprise test, common management, weighs in Trosper's favor, as it appears that Howmedica and Stryker not only shared common executives, but also potentially shared managers in charge of employment and termination decisions. Finally, Howmedica and Stryker are commonly owned. A reasonable jury could find an employer-employee relationship between Stryker and Trosper based on these four factors of the integrated enterprise test.[23] [24]

---

[23] In its Reply, Stryker objects to Trosper's statement that he "was an employee of Howmedica and Stryker Corporation from April 2007 until May 2011," Trosper Decl. ¶ 1, on the ground that this constitutes "improper opinion testimony and/or conclusion." Reply at 1 n.1. The Court overrules the objection because Trosper has sufficient personal knowledge to provide a lay witness opinion as to his belief concerning what his employee status was with respect to each corporation.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Stryker Corporation's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: April 22, 2014

_____
LUCY H. KOH
United States District Judge

---

[24] In his Opposition, Trosper raises three alternative theories to support a finding that Stryker is Trosper's employer, and also suggests that because Howmedica is merely Stryker's "agent," Stryker can be held liable for Howmedica's actions as the principal. The Court acknowledges that California law is unsettled as to what precise test regarding the existence of an employer relationship applies to claims under California Labor Code § 2802. *See, e.g.*, *Vernon*, 116 Cal. App. 4th at 129 (recognizing that the precise test under California law for determining the existence of employer-employee relationships is in flux). Nonetheless, the Court need not reach Trosper's other arguments because summary judgment must be denied on the basis of the integrated enterprise test.