1

2

3

4

5

6

7

8

9

10

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TANNER TROSPER, on behalf of himself, individually, and all others similarly situated, | Case No.: 13-CV-0607-LHK |
| Plaintiff, | ORDER GRANTING PLAINTIFF's MOTION FOR CLASS CERTIFICATION |
| v. | |
| STYKER CORPORATION, HOWMEDICA OSTEONICS CORPORATION, and DOES 1 to 100, inclusive, | |
| Defendants. | |

Plaintiff Tanner Trosper ("Trosper") filed this putative class action against his former employers, Stryker Corporation ("Stryker") and Howmedica Osteonics Corporation ("Howmedica"), alleging that he has not been indemnified for employment-related expenses in violation of California Labor Code § 2802 and California's Unfair Competition Law (Bus. and Prof. Code § 17200 et seq.) ("UCL"). Before the Court is Trosper's Motion for Class Certification. ECF No. 47 ("Mot."). The Court, having considered the record in this case, applicable law, and parties' briefs, hereby GRANTS Trosper's Motion for Class Certification.

I.      BACKGROUND

        A.      Parties and Plaintiff's Complaint

United States District Court

For the Northern District of California

1    Plaintiff Trosper was employed by Howmedica from approximately November 2008 until

2 May 2011.[1] ECF No. 1, ¶ 9 (Complaint, hereinafter "Compl."). Trosper worked in the Stryker

3 Craniomaxillofacial division ("CMF") of Howmedica as a Sales Representative. ECF No. 36-1 at

4 52:12-15 (Shinevare Dep.). Defendant Howmedica is a wholly-owned subsidary of Defendant

5 Stryker, and both corporations are in the business of manufacturing and marketing medical devices.

6 Compl. ¶¶ 10- 11; ECF No. 34-1 ¶ 4 (Shinevare Decl.) In order to market, sell and distribute its

7 products, Howmedica employs "sales representatives" in each of its divisions; specific to this

8 lawsuit are the CMF, Joint Preservation, Reconstructive ("Recon"), and Trauma and Extremity

9 ("Trauma") divisions.[2] Opp'n at 2-3.

10    In his Complaint, Trosper alleges that between November 2008 and May 2011 he incurred

11 numerous expenses in the course of his employment and for the benefit of his employer, including

12 costs associated with operating his personal vehicle and mobile phone; use of a fax machine,

13 landlines, office space, office supplies, internet access, storage, entertainment; dining with clients;

14 and travel expenses (such as airfare, lodging, and local transportation). Compl. ¶¶ 20-21. Trosper

15 alleges that during the Class Period[3] Stryker and Howmedica did not have a policy providing for

16 reimbursement of expenses to putative class employees, and that the existing policy actually

17 prohibited such reimbursement. *Id.* ¶ 24. Trosper contends Defendants' policy violated California

18 Labor Code § 2802, which provides that "[a]n employer shall indemnify his or her employee for all

19 necessary expenditures or losses incurred by the employee in direct consequence of the discharge

20 of his or her duties." *Id.* ¶¶ 23, 39-40. Moreover, Trosper alleges that Defendants' policy

21 constituted an "unfair" and "unlawful" business practice in violation of the UCL. *Id.* ¶¶ 45-48. The

22

23 ───────────────

[1] Trosper's declaration states he was an employee from April 2007 until May 2011. ECF No. 47-5

24 ("Trosper Decl.") ¶ 3. This factual discrepancy between the Complaint, on the one hand, and

25 Trosper's declaration on the other, is not dispositive of the matters at issue in the instant motion.

[2] During the class period, all four divisions at issue in this lawsuit (Joint Preservation,

25 Reconstructive, Trauma, and CMF) were part of the "Stryker Orthopaedics" group, which is an

26 alternate name for Howmedica. On January 1, 2013, CMF began reporting to a new group, called

MedSurge and Neurotechnology. ECF No. 48 ("McCarthy Dep. 1") at 9:23-10:12. Michael

27 McCarthy, Howmedica Controller and Director, notes that the terms "Howmedica" and "Stryker

Orthopaedics" are interchangeable. *Id.* at 11:14-15.

28 [3] The Class Period is defined as the period from February 1, 2009 to October 1, 2012. Mot. at 3.

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**United States District Court**
For the Northern District of California

1   putative class consists of "all persons who have been, or currently are, employed by Defendants in

2   California during the Class Period as 'Sales Representatives.'" *Id*. ¶ 1.

3         **B.**     **Sales Representatives' Duties and Ordinary Expenses**

4        Plaintiff asserts that all of Howmedica's California "Sales Representatives" generally have

5   the same duties, often work from home, and do not have office space to which they report daily.

6   Mot. at 10; ECF No. 48-2 at 12:14-19; Trosper Decl. ¶ 9. Plaintiff further asserts that Howmedica

7   Sales Representatives regularly incur business expenses including phone, internet, fax, and

8   mileage. Mot. at 10; Trosper Decl. ¶¶ 7-8; *see also* ECF No, 47-1 ("Eckert Decl.") ¶ 5 ("I incurred

9   business related expenses for my cell phone, driving, fax machine, internet usage, etc.").

10  Defendants do not dispute that Sales Representatives often incur the above types of expenses as a

11  result of their work.

12        **C.**     **Reimbursement Policy for Ordinary Business Expenses**

13       Trosper claims that during the Class Period Defendants had a policy not to reimburse sales

14  representatives for ordinary business expenses. Mot. at 7; Trosper Decl. ¶¶ 6, 10 ("I am aware that

15  the Defendants' policy of not reimbursing Sales Representatives for ordinary business expenses

16  was applied to all Sales Representatives in California"); *see also id.* at ¶ 14 ("I have spoken with

17  other Sales Representatives from other divisions in Howmedica and, at least while I was employer

18  at Stryker, none of them received reimbursement of day-to-day expenses either."). In support,

19  Trosper submits his own declaration in which he states that he learned at the time of his hiring that

20  "Sales Representatives were not reimbursed for expenses they incurred in fulfilling their job duties

21  and that the only expenses that were reimbursed were the occasional large lunch or dinner with

22  prospective clients." Trosper Decl. ¶ 3; *see also* Eckert Decl. ¶ 6 ("Stryker Trauma covered

23  expenses for large lunches or dinners with doctors and hospital staff. However, Stryker Trauma did

24  not front, pay or reimburse me for other business related expenses. I was never reimbursed for my

25  cell phone, fax machine, or mileage."). Trosper also cites the deposition of Defendants' Rule

26  30(b)(6) witness Michael McCarthy, Howmedica Senior Director/Controller. McCarthy testified

27  that prior to February 1, 2011, Howmedica had no policy specific to sales representatives regarding

28  reimbursement of business expenses in any Howmedica division. McCarthy Dep. 1 at 15:10-24.

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1    McCarthy also testified that Howmedica's policy was *not* to directly reimburse sales

2    representatives as expenses were incurred but rather to compensate sales representative in the Joint

3    Preservation, Trauma, and Recon divisions for their business expenses through their sales

4    commissions. Opp'n at 4; McCarthy Dep 1. at 19:7-9 ("The commission rates that the sales reps

5    earned were to cover most of the expense reimbursement that they would incur."). He testified that

6    prior to October 2012, the same was true for sales representatives in the CMF division. ECF No.

7    54-2 ("McCarthy Dep. 2") at 14:4-12.

8         With respect to the Trauma and Recon divisions, Plaintiff cites a Howmedica document

9    effective November 2006 entitled "Sales Representative Reimbursement Policy," applicable to the

10   Trauma and Recon divisions, which indicates "No" to whether expenses including Vehicle

11   Mileage, Airfare, Business Meals, Lodging, Limo, Entertainment, Parking, Tolls, Taxi, Bus, Train,

12   Auto Rental, Secretarial Service, Mobile Phone, PDA and Internet were reimbursable. ECF No. 48-

13   1 at 5 ("Mot. Ex. 4"). Defendants concede that Trauma and Recon had written policies not to

14   "directly" reimburse sales representatives during the Class Period. Opp'n at 6 ("[T]he divisional

15   Recon/Trauma Sales Representative Reimbursement Policy states that expenses were not subject to

16   direct reimbursement . . ."); *id.* at 8 ("The Trauma and Extremity division share the Reconstructive

17   division's written reimbursement policy."). However, Defendants claim that increased commission

18   rates were intended to reimburse representatives for expenses in these divisions. Opp'n at 7.

19        Defendants contend the CMF division had a separate unique policy which reimbursed sales

20   representatives for many business expenses. Opp'n at 4 (citing "Exhibit 6," ECF No. 52-3 at 20-

21   29). The document Defendants cite is a general travel and entertainment reimbursement policy

22   effective July 2010, applicable to all employees of the CMF division, which does not specifically

23   reference sales representatives. ECF No. 52-3 at 20. In rebuttal, Plaintiff points to Defendants' new

24   CMF reimbursement policy effective October 1, 2012, applicable specifically to sales

25   representatives, which included the stated purpose of "clarify[ing] which expenses are

26   reimbursable by Stryker to Sales Representatives." ECF No. 48-1 at 2-3. This updated policy says

27   that sales representatives will be directly reimbursed for various categories of expenses, including

28   vehicle mileage, airfare, meals, parking and tolls, office supplies, mobile phones, internet services,

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

and other related expenses. *Id*. Plaintiff also points to McCarthy's testimony that prior to this new policy, CMF sales representatives were not directly reimbursed for their business expenses, but instead, their commission rates were supposed to cover such expenditures. McCarthy Dep. 2 at 14:4-12. Plaintiff argues that McCarthy's testimony combined with evidence of the new policy proves that Howmedica's old policy with regard to CMF sales representatives during the Class Period was not to reimburse them for expenses. Plaintiff also cites to a deposition in which Seth Brussea, Sales Director for Stryker CMF, testified that the CMF policy during the Class Period stated that "all business expenses are to be paid by you and no reimbursement will be provided by Stryker CMF for such expenses unless explicitly authorized in each case by your Area Director of Sales." ECF No. 54-3 at 5-7.

Defendants assert that the Joint Preservation division did not have its own reimbursement policy, and that therefore the global baseline reimbursement policy for *all* Howmedica divisions applied to sales representatives in the Joint Preservation division. Opp'n at 9. Defendants provide a copy of that policy which was effective in June 2008, which states, "It is the Company's policy to reimburse employees for actual business expenses incurred in connection with the performance of their assigned duties." ECF No. 56-1 at 9.

Plaintiff concedes he was reimbursed for at least some of his business expenses during the Class Period. Mot. at 9-10; Opp'n at 4-6. Plaintiff was reimbursed for large meal expenses, car payments, gas, and other various expenses. ECF No. 52-1 ("Trosper Dep. 2") at 24:23-36:6.  He states these expenses were limited to large dinners and other special expenses, and that generally, sales representatives were not reimbursed for regular business expenses. ECF No. 48-2, Ex. 6 ("Trosper Dep. 1") at 6:14-17. Howmedica also cites evidence that sales representatives in the CMF and Recon departments could request some direct expense reimbursements from their managers, and in fact did so. *See, e.g.*, Trosper Dep. 2 at 24:20-36:6 (stating he submitted reimbursement expense requests for his work and was paid for some of his expenses); ECF No. 52-4 ("Watt Dep.") at 4:4-23 (Bryan Wyatt, a sales representative in Reconstructive division, testifying he submitted expense reports and was reimbursed for some business expenses); ECF No. 50-3 ("Michael McCarthy Decl.") ¶ 7 ("I am generally aware that each Howmedica division, and

5

United States District Court
For the Northern District of California

individual managers within those divisions, as a matter of practice utilized their discretion to approve the direct reimbursement of various reasonable business expenses for California Sales Representatives, whether those expenses were expressly provided for in any specific written policy or not.").

Plaintiff claims Howmedica did not inform putative class members at any time that a portion of their commission was intended to reimburse them for business expenses. Mot. at 8; McCarthy Dep. 1 at 19:14-20:15 (McCarthy stating he was not aware of any time prior to February 1, 2011 when the company notified those in the Recon, Trauma, and Joint Preservation divisions that part of their commission was meant to reimburse them for business expenses); *id.* at 22:6-11 (stating he could not identify any document in which CMF sales representatives were informed that their commissions were intended to cover business expenses).

Plaintiff alleges that Howmedica did not implement a new reimbursement policy (which properly compensated Sales Representatives for business expenses) until February 1, 2011 with respect to the Preservation, Recon, and Trauma divisions, and not until October 1, 2012[4] with respect to the CMF division. Mot. at 5, 7; McCarthy Dep. 1 at 22:12-23:20; ECF No. 48 at 29 (copy of new policy for Preservation, Reconstruction, and Trauma divisions); ECF No. 48-1 at 2 (copy of new policy for CMF division).

### D.    Procedural History

Trosper filed his Complaint on February 12, 2013. ECF No. 1. Defendants answered on March 29, 2013. ECF No. 16. Stryker filed a motion for summary judgment on January 23, 2014 (ECF No. 34), which the Court denied on April 22, 2014. ECF No. 43. Trosper filed the instant Motion for Class Certification on May 27, 2014. ECF No. 47. On June 27, 2014, Defendants filed an Opposition ("Opp'n"). ECF No. 50. Trosper filed a Reply on July 24, 2014. ECF No. 54 ("Reply").

---

[4] Defendants assert that the new policy for the CMF department was effectuated December 1, 2012. Opp'n at 9. However, Plaintiff cites evidence (ECF No. 48-1, pages 2-3) that the CMF policy was effective as of October 1, 2012. Mot. at 8; Reply at 3. Either way, the difference is not dispositive to the outcome of this motion.

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1   Plaintiff seeks to certify the following class: "All individuals who were employed by the

2   defendants during the Class Period in California who held the title of 'Sales Representative.'" Mot.

3   at 3. Plaintiff claims that the list of putative members provided by the Defendants exceeds 260

4   individuals. Mot. at 12; ECF No. 47-7, (Declaration of Louis Marlin) ¶ 3. The Class Period is

5   defined as the period from February 1, 2009 to October 1, 2012. Mot. at 3. Plaintiff seeks an order:

6   (1) appointing Trosper as class representative; (2) appointing Marlin & Saltzman, LLP and United

7   Employees Law Group PC as Counsel for the Class; and (3) authorizing Plaintiff to send notice to

8   all absent class members. Mot. at 3-4.

9   **II.      LEGAL STANDARD**

10          Class certification of Plaintiffs' Section 2802 and UCL[5] claims is governed by Federal Rule

11  of Civil Procedure 23. Whether or not to certify a class is within the discretion of the Court. *United*

12  *Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-*

13  *CIO CLC v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).

14          "As a threshold matter, before reaching the requirements of Rule 23, the party seeking class

15  certification must demonstrate that an identifiable and ascertainable class exists." *Gray v. Golden*

16  *Gate Nat. Recreational Area*, 270 F.R.D. 501, 508 (N.D. Cal. Aug. 30, 2011) (citing *Mazur v.*

17  *eBay, Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009)).

18          Under Federal Rule of Civil Procedure 23(a), Plaintiff must establish that: "(1) the class is

19  so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

20  common to the class; (3) the claims or defenses of the representative parties are typical of the

21  claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

22  the interests of the class." Fed. R. Civ. P. 23(a). These requirements are "commonly referred to as

23  the numerosity, commonality, typicality, and adequacy requirements." *Norris-Wilson v. Delta-T*

24  _____

25  [5] Plaintiff is proceeding on the "unlawful" prong of the UCL, which is derivative of the alleged
    Section 2802 violation. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180
    (1999) (noting that the UCL "borrows violations of other laws and treats them as unlawful

26  practices that the unfair competition law makes independently actionable."). Thus, whether the
    putative class is certifiable as to the UCL claim depends on whether it is certifiable as to the

27  Section 2802 claim. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007).
    Accordingly, although the Court limits its Rule 23 analysis to the Section 2802 claim, this analysis

28  applies with equal force to the UCL claim.

*Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010). Plaintiff bears the burden of establishing that all four requirements of Rule 23(a) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Additionally, Plaintiff must establish one of the three requirements of Rule 23(b). *Id.* Plaintiff here seeks to certify a class for his claim pursuant to Rule 23(b)(3). Mot. 15. In order to certify a class pursuant to Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.    DISCUSSION

Defendants object to certification on the grounds that: (1) Plaintiff's proposed class is not ascertainable; (2) Plaintiff's proposed class fails the commonality, typicality, and adequacy requirements of Rule 23(a); and (3) Plaintiff's proposed class fails the predominance and superiority requirements of Rule 23(b)(3). The Court addresses each of these contentions in turn.

### A.    Objections to Declarations

Before addressing whether the proposed class meets the various requirements noted above, the Court addresses Defendants' objections to various declarations submitted by Trosper. Defendants argue that the declarations of Wyatt, Sarkisian, and Gutierrez contain speculation, hearsay, and that they are "sham affidavits" because they are contradictory to their declarations. Opp'n at 7-8 nn. 5-7. Defendants also argue Trosper's declaration contains hearsay, improper opinion testimony, and is a sham affidavit. *Id.* at 20 n.13. The Court denies Defendants' objections as to the declarations of Wyatt, Sarkisian and Gutierrez as moot, as the Court does not rely on any of these witnesses' testimony in reaching its conclusions.[6] The Court addresses Trosper's declaration below.

---

[6] The Court denies as moot Defendants' objection to Plaintiffs' Reply's characterization of the testimony of Jeremy McCarthy, another Howmedica employee unrelated to Michael McCarthy, because the Court does not rely on Jeremy McCarthy's testimony in reaching its conclusion. ECF No. 55. The Court also denies as moot Plaintiff's objection to the Declaration of Kevin Rex, ECF No. 50-4, *see* Reply at 15, and Plaintiff's objection to the Declaration of Michael McCarthy, ECF No. 50-3, because the Court grants class certification without relying on these declarations.

**United States District Court**
For the Northern District of California

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In 2012, the Ninth Circuit rearticulated the Circuit's standard on "sham" affidavits. *Yaeger v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir.), *cert. denied*, 133 S. Ct. 2026 (2013) *reh'g denied*, 134 S. Ct. 33 (2013). "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." 693 F.3d at 1080 (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (internal quotation marks omitted)). "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). In *Yaeger*, the plaintiff appealed the district court's grant of summary judgment to defendants, arguing that his declaration had been inappropriately disregarded as a sham affidavit. *Id.* at 1079. At his deposition, Yaeger could not recall answers to over 200 questions, even when defendant's counsel showed him exhibit documents to refresh his recollection. *Id.* However, three months later in his declaration he described in great detail many of the same events he formerly could not recall. *Id.* The district court disregarded Yaeger's declaration as a "sham" based on these contradictions, and the Ninth Circuit held that the district court had not abused its discretion by doing so. *Id.* at 179, 181.

In *Kennedy v. Allied Mutual Insurance,* the Ninth Circuit defined "sham" testimony as "testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." 952 F.2d at 267. The *Kennedy* court instructed that the "[sham] rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id.* at 266-67. Instead, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale*, 577 F.3d at 998-99. Here, Defendants argue that Trosper's declaration is a "sham," citing Trosper's declaration where he testified that during his employment with Howmedica he had contact with other Sales Representatives within and outside his CMF division, and that this was the basis for his general knowledge that Howmedica did not reimburse Sales Representatives in California for business expenses. Opp'n at 20; Trosper Decl. at ¶ 6

**United States District Court**
For the Northern District of California

1   (declaring that "[d]uring my employment as a Sales Representative in California, I had contact

2   with other Howmedica Sales Representatives," and "[a]s a result, I am aware that the Defendants'

3   policy of not reimbursing Sales Representatives for ordinary business expenses was applied to all

4   Sales Representatives in California"). Defendants contend this testimony conflicts with Trosper's

5   prior testimony at his deposition, where he testified to the following:

6       [Defendants' Counsel]:     Have you discussed this lawsuit at any time with any current

7       or former Stryker CMF sales representatives?

8       [Trosper]:    Not that I recall.

9       Q:    Have you discussed this lawsuit at any time with any Stryker employees at all?

10      A:    Not that I recall.

11      Q:    Have you discussed this lawsuit at any time with any Howmedica Osteonics

12      employees?

13      A:    Not that I recall.

14  Trosper Dep. 2 at 49:25-50:8. Defendants also cite the following from Trosper's deposition:

15      [Defendants' Counsel]:     Have you made any efforts to recruit other CMF or HOC

16      sales representatives to participate in this case?

17      [Trosper]:    No.

18  Trosper Dep. 2 at 51:14-15. Defendants "object to Plaintiff's declaration in its entirety" on the

19  basis that it "contradicts his deposition testimony." Opp'n at 20. The Court disagrees. Plaintiff's

20  testimony that he had contact with other sales representatives when he was an employee of

21  Howmedica, Trosper Decl. ¶ 6, in no way "flatly contradicts" his deposition testimony that he has

22  not discussed this lawsuit with other employees or recruited other employees to join the lawsuit,

23  Trosper Dep. 2 at 49:25–50:8, 170:14-16. *Kennedy*, 952 F.2d at 267. No "clear and unambiguous"

24  discrepancy between the two testimonies is apparent, and accordingly, the Court overrules

25  Defendants' objection to Trosper's declaration as a "sham affidavit."[7]

26

27  _____

    [7] Defendants also object to Trosper's declaration on the basis that his statements constitute
    inadmissible hearsay because they are based on what other individuals told him. Opp'n at 20.
    However, "evidence presented in support of class certification need not be admissible at trial."

28      *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010); *Faulk v. Sears Roebuck*

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**B.    Ascertainability**

The Court now addresses whether the class meets the ascertainability requirement. "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696, at *4 (N.D. Cal. Feb. 13, 2014) (quoting *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011)). A class is ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class." *See Wolph v. Acer America Corp.*, 2012 WL 993531, at *2 (N.D. Cal. Mar. 23, 2012) (certifying a class where "the identity and contact information for a significant portion of these individuals [could] be obtained from the warranty registration information and through [defendant's] customer service databases"). Here, Plaintiff's proposed class is ascertainable because it is identifiable from Defendants' records. *Id.* Defendants have produced a list of all class members, complete with members' addresses. *See* Mot at 12, 21. Such records are sufficient to meet the ascertainability requirement imposed by Rule 23.

Defendants' argument to the contrary fails. Defendant argues that the proposed class is not ascertainable because it is a "fail safe" class that requires the Court to resolve the disputed merits issue in each class member's favor before he or she can qualify as a member. Opp'n at 2, 10-11. In support of this contention, Defendants cite *Ostler v. Level 3 Communications, Inc.*, 2002 WL 31040337 (S.D. Ind. Aug. 27, 2002), and *Paulino v. Dollar General Corp.*, 2014 WL 1875326 (N.D. W.Va. May 9, 2014). The Court disagrees.

The Ninth Circuit has held that "[t]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established. When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant[]?" *Kamar v. RadioShack*

---

*& Co.,* 2013 WL 1703378, at *6 n.5 (N.D. Cal. Apr. 19, 2011). Accordingly, the Court overrules Defendants' hearsay objection. Defendants' other objection that his testimony constitutes improper opinion testimony, Opp'n at 20, is also overruled because Trosper may provide his lay witness opinion as an employee concerning what he understood his employers' policies to be.

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

*Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010) (unpublished). Classes that are "fail safe" are unascertainable because the class definition would allow putative class members to avoid the effects of res judicata if they do not succeed on the merits of their claim, such that putative members either win or are not part of the class. *See, e.g.*, *Schilling v. Kenton Cnty., Ky.*, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011) ("Plaintiffs in this case define the class as consisting of individuals who while incarcerated were 'subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment ... and the Fourteenth Amendment' and were denied 'appropriate and necessary' medical care as a 'result of Defendants' neglect and deliberate indifference.'"); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008), *aff'd and remanded*, 492 Fed. Appx. 710 (9th Cir. 2012) ("[P]laintiffs now seek to define the class in terms of workers who were denied overtime in violation of the law. A class defined in this fashion constitutes an impermissible 'fail-safe' class, whose members would be 'bound only by a judgment favorable to plaintiffs but not by an adverse judgment.'" (citation omitted)).

In both *Paulino* and *Ostler*, cited by Defendants, the plaintiffs' proposed classes were denied certification for the same reasons. In *Paulino*, the proposed class definition included "[a]ll former employees of Dollar General stores located in West Virginia who, according to Dollar General's records, were involuntarily terminated from employment on or after July 10, 2005 and who were not paid their final wages within 72 hours of termination." *Paulino*, 2014 WL 1875326, at *4 (internal quotation marks omitted). The plaintiff asserted that in order to ascertain the class, the court needed to "examine Dollar General's records to determine whether a former employee was 'involuntarily terminated' under the [West Virginia Wage Payment and Collection Act]." *Id.* The court denied certification, finding the class was "fail safe" because "[i]n this case, class membership is determined based on whether a person has a valid claim." *Id.* Similarly in *Ostler*, "plaintiffs initially sought to define a class in terms of all adjoining landowners in Indiana whose property rights were violated by Level 3's installation of fiber optic cable." *Ostler*, 2002 WL 31040337, at *2. The court declined to certify the "fail safe" class, "because the definition based class membership on the ability to bring a successful claim on the merits." *Id.* The court noted that

12

1    "[s]uch a definition is inconsistent with Rule 23(c)(3), which provides in part that a judgment

2    adverse to the class will bind all class members." *Id.*

3         Defendants' contention that Trosper's proposed class is "fail safe" is meritless. Plaintiff's

4    class definition includes "[a]ll individuals who were employed by defendants during the Class

5    Period in California who held the title of "Sales Representatives.'" Mot. at 3. Nothing in this

6    definition would allow a putative class member to escape class membership should the class fail at

7    the merits stage, nor does the class definition require a determination of whether Howmedica

8    violated Cal. Lab. Code § 2802 for any given class member before deciding if that person is a class

9    member. Indeed, were Defendants' assertion true that "because there is only one substantive legal

10   claim pled . . . the proposed class [] effectively and necessarily requires a determination of

11   [whether Howmedica's reimbursement policy violated Cal. Lab. Code § 2802] before a Sales

12   Representative can qualify as a class member," (Opp'n at 11), Defendants' construction of the "fail

13   safe" doctrine would render every class unascertainable if the plaintiff class seeks a finding of

14   liability against the defendant. Defendants' construction is also unsupported by the law. *See, e.g.*,

15   *Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091, at *3 (N.D. Cal. May 14, 2012) (certifying,

16   without mentioning any "fail safe" problem, a class with definition of "[a]ll employees who were

17   employed by defendant during the class period in California who hold the title of 'Sales

18   Representative'"); *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co*., 2013 WL 6145706,

19   at *3-4 (N.D. Cal. Nov. 21, 2013) (granting conditional class certification of a class of "[a]ll

20   persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited

21   Liability Corporation in the State of California from August 1, 2008 through the date of

22   preliminary approval in a Covered Position"); *Lindell v. Synthes USA*, 2014 WL 841738, at *4

23   (E.D. Cal. Mar. 4, 2014), *report and recommendation adopted*, 2014 WL 1794467 (E.D. Cal. May

24   6, 2014) (recommending class certification of two classes, both defined as "all former, current, and

25   future Sales Consultants who have been, are, or will be employed by Synthes in California from

26   four years prior to the filing of this action (December 13, 2007) to the date of final disposition").

27        Accordingly, the Court finds Plaintiff's proposed class definition is ascertainable because

28   the class definition does not require success on the Plaintiffs' claims in order to determine who is

United States District Court
For the Northern District of California

13

or is not a class member. *See Kamar*, 375 Fed. Appx. at 736 ("[T]he definition is not a circular one that determines the scope of the class only once it is decided that a class member was actually wronged. Moreover, if a class member was not legally wronged, [Defendant] will be protected against liability to that person.").

### C.      Rule 23(a) Requirements

The Court next analyzes whether the proposed class meets the requirements of Rule 23(a) that there are questions of law or fact common to all class members, that the class be represented by a lead plaintiff whose claims are representative and typical of the class, and that the lead plaintiff will fairly and adequately protect the class's interests. Fed. Rule Civ. Proc. 23(a). The Court addresses each requirement in turn.[8]

#### 1.      Commonality

Rule 23(a)(2) requires that there be "questions of fact and law which are common to the class," although "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). A class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The key consideration in assessing commonality is "not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citations and quotation omitted; emphasis in original). Here, Plaintiff argues Howmedica had a policy of not reimbursing putative class members' necessary business expenses. Cal. Lab. Code § 2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . ." The California Supreme Court has held that "an employer may satisfy its statutory business expense reimbursement obligation under

---

[8] Defendants do not contest numerosity. Given that there are approximately 260 putative class members, the Court finds that Rule 23(a)(1)'s numerosity requirement is met. *See* ECF No. 47-7 ¶ 3; *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011) ("[A] class greater than forty often satisfies the requirement, while one less than twenty-one does not").

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**United States District Court**
For the Northern District of California

1     section 2802 by paying employees enhanced compensation in the form of increases in base salary

2     or commission rates, provided the employer establishes some means to identify the portion of

3     overall compensation that is intended as expense reimbursement, and provided also that the

4     amounts so identified are sufficient to fully reimburse the employees for all expenses actually and

5     necessarily incurred." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 575 (2007).

6     Defendants claim the commonality requirement is not met. The Court disagrees.

7          This Court and others in this Circuit have found that commonality is met when, as here, the

8     proposed class asserts that an employer adopted a policy of not reimbursing its employees'

9     necessary business expenses in violation of Section 2802. *See Stryker*, 2012 WL 1715091, at *5

10    ("Plaintiffs meet the commonality requirement here because, at this stage of the litigation, the

11    evidence shows that the putative class members worked as Stryker sales representatives in

12    divisions with uniform business expense reimbursement policies that, Stryker claims, reimbursed

13    putative class members' necessary business expenses primarily through Stryker's commission-

14    based compensation system."); *Schulz v. QualxServ, LLC*, 2012 WL 1439066, at *4 (S.D. Cal. Apr.

15    26, 2012) (finding commonality "because [plaintiffs] challenge uniform policies and systemic

16    practices that apply to this class of employees"); *Stuart v. Radioshack Corp.*, 2009 WL 281941, at

17    *7 (N.D. Cal. Feb. 5, 2009) (noting that uniform policy on reimbursement for business trips usually

18    sufficient to satisfy commonality requirement).

19          As in *Stryker*, the Court finds that commonality is satisfied in this case. While Defendants

20    argue that each Howmedica division had differing policies with respect to reimbursement of sales

21    representatives, Plaintiff provides evidence common to the class that is to the contrary. Notably,

22    Howmedica's Controller and Director Michael McCarthy testified that Howmedica sales

23    representatives from all divisions were not directly reimbursed for their business expenses, but

24    were compensated through higher commission rates, until Howmedica implemented policy

25    changes in February of 2011 for the Joint Preservation, Trauma, and Recon divisions, and in

26    October of 2012 for the CMF division. McCarthy Dep. 2 at 9:15-10:13, 12:23-13:8, 14:4-12. This

27    is sufficient to support Plaintiff's argument that there is common evidence regarding whether

28    Howmedica enforced a blanket policy not to reimburse all Howmedica sales representatives during

the Class Period. Indeed, the central question in this lawsuit is whether, as Plaintiff contends, Howmedica's policy violated Section 2802 by failing to compensate sales representatives for business expenses, or if as Howmedica asserts, the company's commission rates fully complied with Section 2802. The answer to that central question will determine the outcome of this case. *See Dukes*, 131 S. Ct. 2551; *Stryker*, 2012 WL 1715091, at *6 (finding the "central question" with respect to commonality requirement was "whether Stryker's business expense reimbursement policy violated Cal. Labor Code § 2802. The answer to this [] question will likely generate a common answer 'apt to drive the resolution of this litigation.").

Defendants' arguments to the contrary are unavailing. First, as in *Stryker*, Defendants attempt to defeat commonality by asking a series of questions that go to whether Defendants complied with *Gattuso* by paying higher commission rates in lieu of reimbursing expenses directly. Opp'n at 12-13. Specifically, Defendants assert there are three questions necessary to determine whether or not Howmedica's reimbursement policy complied with *Gattuso*: (1) Did Howmedica adopt a practice or policy of reimbursing California Sales Representatives for expenses by paying them higher commission rates?; (2) If so, did it establish a method to apportion the enhanced compensation payments between compensation for labor performed and expense indemnification?; (3) If so, was the amount paid for expense reimbursement sufficient to fully indemnify the employees for the expenses they reasonably and necessarily incurred? *Id.* at 13. Defendants then argue that while the answers to questions (1) and (2) are "yes" because Howmedica had a policy of paying increased compensation for expenses in the form of additional commission, there is no common answer to the third question because "the answer will depend on the individualized circumstances of each and every Sales Representative in each division" and "will require individualized analyses of the sufficiency, reasonableness, and necessity of every claimed business expense, and whether each expense was actually submitted and reimbursed." *Id.* at 13-14.

The Court disagrees with Defendants' argument that this series of questions will inevitably lead to different, individualized answers among members of the class, just as the Court found in the *Stryker* case. *See Stryker*, 2012 WL 1715091, at *6. For one thing, the answer to question (1), whether "Howmedica adopt[ed] a . . . policy of reimbursing California Sales Representatives for

16

1   expenses by paying them higher commission rates" is contested by the parties. While Defendants

2   claim Howmedica did adopt such a policy, Plaintiff disagrees and cites evidence that during the

3   Class Period Howmedica's policy was to require Sales Representatives to pay for their own

4   business expenses, and contends that Howmedica never communicated to sales representatives that

5   a portion of their commission was designated for reimbursement of business expenses. *See, e.g.*,

6   Mot. Ex. 4 (stating vehicle mileage, airfare, business meals, lodging, limo, entertainment, parking,

7   tolls, taxi, bus, train, auto rental, secretarial services, mobile phones, PDAs, internet, and monthly

8   service fee expenses were not reimbursable, save for certain limited exceptions); Mot at 15

9   ("[Howmedica] provided no means for an employee to know what portion of their compensation

10  structure was designed to cover employment related expenses and failed to even advise the

11  proposed class members that was their intention.") (citing McCarthy Dep. 1 at 18:25-19:13, 20:9-

12  15, 25:15-26:19). Thus, although Defendants claim the answer to question (1) is "yes," is it

13  certainly possible the answer is "no," in which case liability would be established under *Gattuso*

14  and no analysis of questions (2) or (3) would be necessary. This would mean that Defendants'

15  proposed series of questions would lead to a *uniform* answer among all class members.

16       Second, even assuming the answer to question (1) was "yes," as Defendants argue, the

17  answer to question (2), whether Howmedica "establish[ed] a method to apportion the enhanced

18  compensation payments between compensation for labor performed and expense indemnification"

19  would not necessarily also be "yes" as Defendants claim. *See* Opp'n at 13. Plaintiff cites evidence

20  suggesting Howmedica did not actually apportion a percentage of commission payments to Sales

21  Representatives in order to cover expense reimbursement. *See* McCarthy Dep. 1 at 19:14-21, 20:9-

22  15 (testifying that McCarthy had no knowledge of Howmedica stating in writing to employees an

23  estimate of the amount of reimbursement that was covered by higher commission rates). Thus, the

24  answer to question (2) could very well be "no," in which case liability would be established and no

25  analysis of question (3) would be necessary. This would mean, again, that Defendants' proposed

26  questioning series would lead to a *uniform* answer among all class members.

27       It thus appears that question (3) may be rendered completely moot by the answer to the first

28  or second question. Accordingly, Defendants' argument that there will be no common answer to

17

question (3) because "the answer will depend on the individualized circumstances of each and every Sales Representative" is unpersuasive. Nonetheless, even assuming an answer to question (3) will be necessary, that answer might be a "no," universal to all putative class members, if Howmedica's commission payments failed to sufficiently reimburse each putative class member's necessary business expenses. *See Stryker*, 2012 WL 1715091, at *6 (rejecting same argument Defendants make here and noting, "It is possible that the answer to this question [of whether the amount paid for expense reimbursement was sufficient to fully reimburse Sales Representatives for their business expenses] is 'no,' that is, the commissions fell short of compensating each and every putative class member for all of his or her necessary business expenses."). In sum, the Court is not convinced by Defendants' attempt to defeat commonality by asking a series of questions that go to whether Defendants complied with *Gattuso*, just as in the *Stryker* case.

Nor is the Court convinced by Defendants' other argument that commonality is not met because "individualized, fact-intensive inquiries" or "mini-trials" will be required to determine whether individual class members "had any expenses beyond the amounts indemnified, and whether those expenses were necessary." Opp'n at 14-15. As in *Stryker*, where the Court rejected this argument, the Court again holds that "[t]he fact that [the Defendants] may have reimbursed some individuals more than others or that some individuals may have incurred more expenses than others does not destroy commonality." *Stryker*, 2012 WL 1715091, at *6 (citing *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975) (commonality not "defeated by slight differences in class members' positions")). This is because differences in the amount of an individual class member's damages do not defeat class certification. *Blackie*, 524 F.2d at 905; *accord Stearns v. TicketMaster Corp.,* 655 F.3d 1013, 1026 (9th Cir. 2011); *Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1089 (9th Cir. 2010); *Stryker*, 2012 WL 1715091, at *6 (characterizing as an issue of "damages" the issue whether Stryker "reimbursed some individuals more than others or that some individuals may have incurred more expenses than others.").[9] Furthermore, "whether a

---

[9] While Defendants analogize to *Ortiz v. CVS Caremark Corporation*, 2013 WL 6236743, at *12 (N.D. Cal. Dec. 2, 2013), for the proposition that individualized factual inquiries are necessary for the class to prove liability, and not just *damages*, *Ortiz* is inapposite. Opp'n at 14. There, the plaintiff proposed certification of three separate classes of employees against CVS Pharmacy

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1    business expense is necessary per Section 2802 is a question of fact that can be ascertained by a

2    jury." *Stryker*, 2012 WL 1715091, at *7 (citation omitted). In this case, Plaintiff has provided

3    evidence that putative class members generally incurred the same expenses as part of their duties as

4    Sales Representatives, including cell phone, internet, fax, and mileage expenses. Mot. at 10;

5    Trosper Decl. ¶¶ 7-8 ("As a sales representative, I routinely incurred business expenses, including

6    but not limited [sic], cell phone, facsimile, internet, and mileage for which I was generally not

7    reimbursed); Eckert Decl. ¶ 5 ("When I worked for Stryker Trauma, I incurred business related

8    expenses for my cell phone, driving, fax machine, internet usage, etc."). Additionally, the new

9    policy changes implemented by Howmedica provide for reimbursement of the *same kind* of

10   expenses Plaintiff claims class members generally incurred. *See* ECF No. 48, Exhibit 2 at 29

11   (providing that effective February 1, 2011, the Recon, Trauma, and Joint Preservation Sales

12   Representatives would be reimbursed for mileage, mobile phone, internet, office supply, and other

13   related expenses); ECF No. 48-1, Exhibit 3 at 2-3 (providing that effective October 1, 2012 CMF

14   sales representatives would be reimbursed for mileage, mobile phone, internet, office supply, and

15   other related expenses). Thus, this Court finds that "a factfinder could look at the putative class

16

17   _____

18   Stores. 2013 WL 6236743 at *1. The plaintiff alleged that CVS had its employees perform "Inter-
     store transfers," where an employee would transfer merchandise from one CVS location to another
19   using his personal vehicle. *Id.* at *2. The plaintiff alleged that while CVS had a policy to reimburse
     employees for their mileage expense incurred while performing ISTs, some employees were not
20   fully reimbursed because CVS's mileage rate was too low. *Id.* at *3. The court denied certification
     of the plaintiff's third class, namely all employees who submitted mileage reimbursement requests
21   but did not receive the full reimbursement required by law, because the plaintiff did not plead the
     new theory regarding the low mileage rate in the complaint. *Id.* at *11. However, as relevant here,
22   the court held that even assuming proper pleading, there was no commonality because the question
     of *liability* could only be determined on an individual basis. *Id.* Because CVS had a policy to
23   reimburse employees for mileage expense, the issue of liability boiled down to whether or not the
     defendant's mileage rate of $0.41 per mile fully compensated each employee for his or her actual
24   expenses. *Id.* at *12. Here, unlike the CVS policy in *Ortiz*, which was to "reimburse employees for
     all necessary business expenses," *id.* at *3, Trosper alleges a company-wide policy *not* to
25   reimburse putative class members for their business expenses. Mot. at 14. The question of *liability*
     in this case can be proven by common evidence on a classwide basis based on McCarthy's
26   testimony that all four Howmedica divisions had a policy to reimburse only through higher
     commission rates. This Court has already held that issues regarding whether Stryker "reimbursed
27   some individuals more than others or that some individuals may have incurred more expenses than
     others" are issues of damages, not liability. *Stryker*, 2012 WL 1715091, at *6.

28

19

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

members' duties and the common types of expenses and determine whether a type of expense is necessary to carry out those duties on a class wide basis." *Stryker*, 2012 WL 1715091, at \*7.

In sum, the Court finds that questions of law and fact are common to the putative class, and thus that the commonality requirement is met.[10]

### 2.    Typicality

The typicality inquiry under Rule 23(a)(3) is permissive and requires that Plaintiffs establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The representative claims do not need to be "substantially identical" to those of absent class members, just "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).

Here, Plaintiff meets the typicality requirement because he seeks recovery under the same theories alleged and has the same alleged injury as other class members, namely that the class members were not fully reimbursed for their business expenses under Section 2802. This injury, which is common to the putative class, is a result of Defendants' alleged business expense policy. Defendants argue to the contrary that Trosper fails the typicality requirement for two reasons.

First, Defendants claim Plaintiff had a "special arrangement" with his supervisor whereby he was reimbursed for expenses that other class members were not. Opp'n at 18. Defendants cite Trosper's deposition where he testified about this "special deal" under which he was reimbursed for car payments, gasoline expenditures, and office supplies. *Id.* (citing Trosper. Dep. at 6-7). However, Defendants' argument fails because Plaintiff alleges he also incurred expenses for which he was *not* reimbursed. Trosper Dep. 1 at 6:14-17. As this Court previously held in *Stryker*, "[t]he typicality requirement is met [] because Plaintiffs have alleged an identical injury, namely that the

---

[10] Defendants' request for judicial notice of *Walsh v. Ikon*, No. CGC-04-429428 (Jan. 11, 2006), *aff'd Walsh v. Ikon*, 148 Cal. App. 4th 1440 (2007), Opp'n at 14 n.10, is GRANTED. ECF No. 51. A court may take judicial notice of the existence of another court's opinion. *Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 (9th Cir. 2003).

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

putative class members were not *fully* reimbursed for their necessary business expenses under Cal. Lab. Code § 2802." *Stryker*, 2012 WL 1715091, at *8 (emphasis added). Thus, regardless of Plaintiff Trosper's individual arrangement with his manager, given that he still allegedly incurred expenses for which he was not reimbursed, the Court finds that Plaintiffs' claim is "reasonably co-extensive" with the class claims and thus that Plaintiff has "sufficiently established that [he is] typical of the proposed class." *Id.* (citing *Hanon*, 976 F.2d at 508).

Second, Defendants claim that the amount of injury, if any, suffered by class members is not consistent across the class. Opp'n at 17. In other words, because the damages suffered by individual sales representatives varied based on the reimbursement practices of individual supervisors, Defendants argue Plaintiff's claims cannot be typical of the class as a whole. However, the Court finds this argument is not dispositive of the typicality analysis because regardless of possible individual differences in *damages* for class members, "each of the Plaintiffs' claims stem from the same allegedly unlawful policies and practices." *Lopez v. G.A.T. Airline Ground Support Inc.*, 2010 WL 3633177, at *7 (S.D. Cal. Sept. 13, 2010) (holding that lead plaintiffs were typical because "[e]ven though individual employees may not have suffered identical harm, each of the Plaintiff's claims stem from the same allegedly unlawful policies and practices").

Third, Defendants claim Plaintiff is not typical because he only worked in the CMF division, whose Sales Representatives comprise only six percent of the putative class. Opp'n at 18. This argument fails, as courts commonly certify classes when the class representative adequately represents the type of harm suffered by class members but does not comprehensively represent every division of labor or job title included in the class. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (finding class representatives satisfied typicality despite defendant's objections that plaintiff had not proven "each job category had a class representative for each type of discrimination claim alleged" because "the representatives' claims [were] 'reasonably coextensive with those of absent class members.'" (citation omitted); *Cornn v. United Parcel Service, Inc.*, 2005 WL 588431, at *7 (N.D. Cal. March 14, 2005) (holding that class representatives met the typicality requirement even though they did not include employees from

21

every type of UPS driver position included in the class, because the policies challenged by the class applied equally to all driver positions included in the class definition).

In sum, the Court finds that the typicality requirement is met.

### 3.    Adequacy of Representation

Rule 23(a)(4) permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Class representatives fail to meet the adequacy standard when the "conflicts between the class members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)). Here, Defendants do not challenge the adequacy of Plaintiff's counsel, Marlin & Saltzman, LLP and United Employees Law Group PC. Upon review of Plaintiff's declarations, the Court finds that Plaintiff and the proposed class will be represented by qualified and competent counsel. *See* ECF Nos. 47-6, 47-7.[11] However, Defendants contend that Trosper is inadequate as a class representative, alleging that he: (1) is unfamiliar with the general facts of the case; and (2) first learned of his counsel's firm when he was contacted by a representative there. Opp'n at 18-20. The Court addresses each of these contentions below.

While the Ninth Circuit has never imposed a knowledge requirement on class representatives at the certification stage, some district courts have done so. *See, e.g.*, *In Re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 118 (C. D. Cal. Oct. 22, 2007) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982), where the Fifth Circuit held that a class representative satisfied the Rule 23(a) requirement when "[o]n the whole, [the plaintiff's] deposition show[ed] commendable familiarity with the complaint and with the concept of a class action."). District courts in the Ninth Circuit "which have imposed this requirement have

---

[11] The Court similarly certified the same firms as class counsel in the *Stryker* case. *See Stryker*, 2012 WL 1715091, at *8 ("These two firms have a wealth of experience in employment class actions.").

22

**United States District Court**
For the Northern District of California

1   recognized that the threshold for sufficient knowledge is not high. All that is necessary is a

2   'rudimentary understanding of the present action and … a demonstrated willingness to assist

3   counsel in the prosecution of the litigation." *In Re Live Concert Antitrust Litigation*, 247 F.R.D. at

4   120 (citation omitted). "Consequently, the plaintiff's knowledge must be severely lacking in order

5   to find the representatives inadequate." *Id.* at 121. "Because class representatives serve as a

6   guardian of the interests of the class, the representatives must have some minimal familiarity with

7   the litigation, although a detailed understanding of the theories and facts of the case is not

8   required." *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007) (internal citations

9   omitted).

10           None of Defendants' allegations here suffice to show that Trosper fails this "knowledge"

11   test. Defendants contend Trosper has inadequate knowledge because "Plaintiff did not know what

12   [the allegation concerning the February 2011 change to reimbursement policy] was referencing,"

13   "did not look at or read any of the expense reimbursement policies that applied to his

14   employment," and "had never seen or reviewed the Business Travel & Entertainment Expense

15   Reimbursement policy for Stryker Orthopedics." Opp'n at 19-20. However, Trosper's declaration

16   makes clear that he has at the very least a basic understanding of the nature of the case. *See* Trosper

17   Dep. 2 at 15:15-25 (Trosper testifying he used his personal American Express and other credit

18   cards to pay for business expenses), 109:2-7 (Trosper testifying how he sought reimbursement for

19   very large lunches and dinners that he paid for personally), 158:7-18 (testifying "I just know that it

20   was known throughout the company that representatives do not get paid expenses"), 159:10-15

21   (testifying "there's an understanding that full line reps do not get expenses" and that this

22   understanding was "general knowledge"), 167:11-24 (testifying "I hope to get reimbursed for

23   business expenses that weren't reimbursed."). Thus, any lack of knowledge on Trosper's part with

24   respect to specific Howmedica or Stryker policies Defendants claim existed does not disqualify

25   him from class representation because he has clearly displayed "an understanding of the basic

26   theory for the case." *See In re Live Concert Antitrust Litigation*, 247 F.R.D. at 121. Plaintiffs with

27   less knowledge have been allowed to proceed as class representatives in cases in this Circuit. *See,*

28   *e.g.*, *In re THQ, Inc. Securities Litigation*, 2002 WL 1832145, at *7 (C.D. Cal. March 22, 2002)

23

1   (holding lead plaintiffs satisfied adequacy requirement even though one did not know the names of

2   six of seven of the defendants and another was unaware of the case's procedural history, because

3   plaintiffs "demonstrated familiarity with the underlying bases for the suit"); *Yamner v. Boich*, 1994

4   WL 514035, at *6-7 (N.D. Cal. Sept. 15, 1994) (allowing plaintiff to represent a class even though

5   he did not know about the case's legal history and may not have read the complaint). The Court

6   further notes that cases which have found inadequate knowledge are clearly distinguishable, such

7   as one in which the court found that the plaintiffs did not seem to care about the case, did not know

8   that several defendants had been dropped, and were unsure as to who was representing them in the

9   case. *See In re Quarterdeck Office Sys., Inc. Sec. Litig.,* 1993 WL 623310, at *6 (C.D. Cal. Sept.

10   30, 1993). Other examples include a woman who did not know who she was suing or what a

11   "defendant" was, *In re CBC Cos., Inc. Collection Letter Litig.,* 181 F.R.D. 380, 384 (N.D. Ill.

12   1998), and a man who had never seen the complaint and could not recall ever seeing any of the

13   representations made in the complaint, *Hillis v. Equifax Consumer Servs., Inc.,* 237 F.R.D. 491,

14   502 (N.D. Ga. 2006).

15          In sharp contrast, here, Plaintiff has demonstrated his commitment to the case and has

16   indicated he will vigorously prosecute the action on behalf of the class. In his declaration, Trosper

17   testifies he is "fully prepared to take on all obligations and serve as class representative for this

18   case." Trosper Decl. ¶ 18. He further testifies that "I understand I am responsible to stay current

19   with the case; to respond to class counsel's requests for documents in a timely manner; be available

20   by phone, email, in person, and must accurately represent the class as best I can." *Id.* ¶ 19.

21   Accordingly, the Court finds Trosper has the requisite knowledge to serve as class representative.

22   *See Williams Corp. v. Kaiser Sand & Gravel Co., Inc.*, 146 F.R.D. 185, 187 (N.D. Cal. 1992)

23   (finding plaintiff fit to act as class representative despite the fact that he had not noticed errors in

24   the complaint, including the misspelling of his name, because "[p]laintiff has demonstrated

25   sufficient knowledge of and interest in the case to ensure that Plaintiff will adequately represent the

26   interests of the class," including traveling for deposition and demonstrating knowledge of case

27   matter).

28

24

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendants also contend, relying on *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777

(N.D. Cal. April 25, 2007), that Plaintiff "first learned of his counsel's firm only when he was

contacted by an attorney there" and "the first time he reviewed the Complaint was in preparation

for his deposition." Opp'n at 19-20; Trosper Dep. 2 at 50:17-24 (Plaintiff testifying he learned of

his counsel's firm when he was contacted by a representative there); Trosper Dep. 2 at 39:3-13

(Plaintiff testifying that he read the complaint for the first time the day before his deposition).

Defendants' reliance on *Bodner* is misplaced. In *Bodner*, the district court denied class certification

due to lack of adequacy because the plaintiff displayed "undeniable and overwhelming ignorance

regarding the nature of [the] action, the facts alleged, and the theories of relief against defendant."

*Bodner*, 2007 WL 1223777, at *2. The court also noted that it was "clear from the record that

plaintiff's counsel, and not plaintiff, [was] the driving force behind this action" because the

plaintiff's lawyers had "constructed this lawsuit before it had a plaintiff" and had recruited the

plaintiff. *Id.* at *2-3. Further, the court noted that the same law firm representing the plaintiff had

engaged in improper tactics by attempting to bring "a seemingly identical lawsuit in another

district" and that plaintiffs' counsel had been the subject of controversy in a past case regarding

their relationship to the named plaintiffs. *Id.* The court found it had to refuse certification because

to grant certification would be an approval of counsel's litigation practices, which the court

deemed to be "abhorrent and inconsistent with the standards of federal class action suits." *Id.* Here,

in sharp contrast, Plaintiff displays a basic understanding of the facts and the legal theories

underlying this case, given that his declaration suggests he understands he is suing in order to

receive money for which he was not reimbursed. Further, Defendants do not allege any

improprieties on the part of Plaintiff's counsel – indeed, they do not contest appointment of class

counsel at all. Given the lack of any allegations or showing of impropriety concerning class

counsel, Defendants' comparison to *Bodner* is unpersuasive. *See Kanawi v. Bechtel Corp.*, 254

F.R.D. 102, 111 (N.D. Cal. 2008) ("The circumstances here are not comparable [to *Bodner*]. There

is no similar air of impropriety surrounding [counsel's] conduct, and the named plaintiffs have

demonstrated that they are familiar with what this case is about.").[12]

---

[12] Finally, while Defendants suggest that Trosper will not actively participate in the prosecution of

**United States District Court**
For the Northern District of California

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In sum, the Court finds Trosper meets both requirements of the Rule 23(a) adequacy test, in that he: (1) has no conflicts of interest with putative class members, and (2) has given no indication that he will not vigorously prosecute this action on behalf of the proposed class. *See Hanlon*, 150 F.3d at 1020.

## D.   Rule 23(b)(3) Requirements

In deciding whether to certify a proposed class under Rule 23(b)(3), courts are instructed to determine whether "questions of law or fact common to the class members predominate over any questions affecting only individual members," and to assess whether the class action form of lawsuit is superior to other available methods. Fed. Rule Civ. Proc. 23(b)(3). Defendants claim the proposed class fails the predominance and superiority requirements of Rule 23(b)(3). The Court addresses each of these contentions in turn.

### 1.   Predominance

To establish class certification pursuant to Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . ." *Hanlon*, 150 F.3d at 1022.

Defendants argue Plaintiff has failed to show that questions common to the class predominate over individualized questions because: (1) individualized inquiries will be required to determine the actual practices of different managers; (2) individualized inquiries will be required regarding actual expenses incurred by each employee; (3) individualized inquiries will be required with respect to whether each class member voluntarily chose not to seek reimbursement; and (4) damages cannot be determined on a class-wide basis. Opp'n at 21-25. The Court already rejected

the case, Opp'n at 18, Trosper's declaration is to the contrary, as cited above. Trosper Decl. ¶ 18 (testifying he is "fully prepared to take on all obligations and serve as class representative for this case.").

26

some of these arguments in the "Commonality" section above. However, because the Rule 23(b)(3) predominance inquiry standard is "higher" than the Rule 23(a) commonality requirement, the Court revisits Defendants' arguments in the context of Rule 23(b)(3). *See Schulz v. QualxServ, LLC,* 2012 WL 1439066, at *5 (S.D. Cal. Apr. 26, 2012).

### a.     Individual Manager Practices

Defendants contend that individual questions predominate because the actual practices of managers varied throughout the four Howmedica divisions, such that some managers reimbursed Sales Representatives for some expenses. Opp'n at 21. Defendants claim the Court will have to engage in individualized inquiries to determine the actual practice of different managers. The Court disagrees that this possibility defeats predominance.

This Court has previously rejected this argument, as sister courts have done as well. *See Stryker*, 2012 WL 1715091, at *10; *Wilson v. Kiewit Pac. Co.,* 2010 WL 5059522, at *7 (N.D. Cal. Dec. 6, 2010). For example, in *Stuart*, the defendant, like Defendants here, argued that individual managers' discretion to reimburse certain expenditures defeated predominance. The court reasoned: "the fact that managers may have had some discretion to determine what [expenses] were incidental and which were not (and thus reimbursable) does not change the fact that the central issue in this case is whether there was a failure to reimburse, which would constitute a violation of the California Labor Code. . . . That legal issue – the legality of failing to reimburse employees for [expenses] – predominates this case. Determining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy[.]" *Stuart*, 2009 WL 281941, at *15. Similarly, in *Wilson*, the defendants argued that common issues did not predominate "because in order to prove which employees [were] owed business mileage expenses the Court would need to determine . . . whether and how many individual employees negotiated special deals with defendant for reimbursement of all expenses – an individualized factual inquiry." 2010 WL 5059522, at *7. Judge Susan Illston rejected this argument, holding that "the fact that certain individuals may have struck special deals with their supervisors . . . to receive company cars, fuel cards or other arrangements so that all of their commute mileage and/or off-site travel expenses

27

1   were fully reimbursed, does not undermine the predominance of the common questions or

2   otherwise preclude certification." *Id.* at *8.

3        So too here, the fact that certain managers reimbursed some ordinary business expenses for

4   certain individuals does not destroy the predominance of common issues in this case. *Stryker*, 2012

5   WL 1715091, at *10 (reaching this same conclusion). Instead, the Court finds that more central to

6   the case than the issue of individual managers' practices is whether or not Howmedica had a

7   general policy not to reimburse Sales Representatives, and whether that policy violated Section

8   2802, which is a question that can be resolved using common evidence. *See id.* at *9 ("[C]ommon

9   questions predominate in the inquiry as to whether Stryker's business expense reimbursement

10  policy violated Cal. Lab. Code § 2802."). Further, while Defendants argue that each Howmedica

11  division had differing policies with respect to reimbursement, Plaintiff has provided evidence

12  common to the class that is to the contrary. *See* McCarthy Dep. 2 at 9:15-10:13 (testifying that the

13  policy applicable to Recon, Trauma, and Joint Preservation sales representatives prior to February

14  1, 2011 was not to directly reimburse, but to reimburse through increased commissions); *id.* at

15  14:4-12 (testifying that the policy applicable to CMF sales representatives prior to October 1, 2012

16  was not to directly reimburse, but to reimburse through increased commissions).

17                      **b.       Actual Expenses Incurred**

18        Defendants next contend that individual questions regarding the actual expenses incurred

19  by each employee predominate. Opp'n at 23. This argument is unpersuasive for the same reasons

20  discussed in the Court's "Commonality" section above. In short, questions concerning the extent of

21  each employee's individual expenses are questions relating to damages, not questions relating to

22  liability, and thus do not defeat predominance. *Blackie*, 524 F.2d at 905 (holding that differences in

23  the amount of an individual class member's damages do not defeat class certification). The court's

24  decision in *Schulz* is also instructive. 2012 WL 439066. There, the defendants, like Defendants

25  here, argued that individual issues predominated because "the reimbursement claim involves an

26  individualized inquiry into each technician's expenses, for example the distance driven between

27  service calls and the particular plan selected for internet and cell phone services." *Id.* at *6. The

28  defendants also argued that they paid "a higher wage to cover the necessary expenses and thereby

28

compl[ied] with *Gattuso*'s approval of paying increased compensation." *Id*. The *Schulz* court rejected these arguments because they related "to the amount of damages incurred by an individual technician." *Id*. The *Schulz* court stated: "The common question of whether Defendant's uniform reimbursement policy . . . complies with *Gatusso* can be answered on a classwide basis." *Id*. This Court previously relied on *Schulz* to reject the argument that predominance is not satisfied where there will be individual questions concerning the amount of expenses for each individual. *See Stryker*, 2012 WL 1715091, at *9-10 (finding predominance because "it appears that resolution of Stryker's potential liability under Cal Lab. Code § 2802 may be determined on a class-wide basis, based upon common, though factually disputed, proof."). The Court applies the same reasoning here, and thus rejects Defendants' argument.

### c. Waiver of Reimbursement

Defendants argue a finding of liability with respect to each individual employee will require an individualized inquiry into whether employees "voluntarily" waived reimbursement by not submitting reimbursement requests during their employment. Opp'n at 22-23 (citing *Hammitt v. Lumber Liquidators, Inc.*, 2014 WL 1912647, at *9-10 (S.D. Cal. May 13, 2014), which held that before an employer's duty to reimburse under Section 2802 is triggered, the employer must either know or have reason to know that the employee has incurred an expense). The Court rejects Defendants' argument that application of a possible waiver defense defeats class certification, for reasons other courts in this district have set forth. *See Stuart*, 2009 WL 281941, at *16-17 (rejecting defendant's argument that different application of possible waiver defense to different employees destroyed predominance because "even if there is a fair variation within the class between those who did and those who did not exhaust [by submitting reimbursement requests], that determination . . . will not undermine the overarching common questions on the core question of liability—did RadioShack violate Section 2802 by not reimbursing employees[.]").

### d. Damages

Finally, Defendants raise two arguments with respect to damages. First, Defendants argue that even if liability could be determined on a class-wide basis, damages cannot be determined on a class-wide basis, because "the trier of fact would need to determine the actual expenses incurred,

29

**United States District Court**
For the Northern District of California

and their reasonableness which . . . will require individualized inquiries regarding a myriad of different factors." Opp'n at 24. The Court is not persuaded. This Court held in *Stryker* that the "individualized nature of the necessity of certain business expenses . . . do not undermine predominance." *Stryker,* 2012 WL 1715091, at *10. The Court reasoned that "in these circumstances -- where there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class -- whether a particular business expense was necessary 'is a common question that is better addressed on a motion for summary judgment or at trial than at class certification.'" *Id.* (citing *Wilson*, 2010 WL 5059522, at *8). Similarly here, Plaintiff's Complaint alleges that "[s]ales [r]epresentatives routinely incur[red] business expenses for cell phone use, internet, and fax machine . . . transportation costs in addition to mileage expenses, land lines, faxes and photocopies, hotels, airfare, meals, postage, trade shows, parking, tolls, etc." Mot. at 10-11; Compl. ¶ 21 ("The expenses incurred by class members include . . . costs of operating their personal vehicles . . . mobile phone and service fees, mobile phone data plan, fax machine, land lines for phone and/or fax, office space, office supplies, internet, storage, entertainment, business meals, and airfare/lodging/taxi/bus/train/auto rental."). Thus, given that these expenses are common to the class, whether or not an individual expense was "reasonable" is a question common to the class suited for summary judgment or trial.[13] *See Stryker*, 2012 WL 1715091, at *10.

Second, Defendants cite the holding in *Comcast Corp. v. Behrend* that damages must be "capable of measurement on a class wide basis using common proof." Opp'n at 24 (citing *Comcast*, 133 S. Ct. 1426, 1432 (2013)). Defendants claim this requirement is not met in this case because individual inquiries are necessary to determine the amount of damages. Opp'n at 24 ("[There are] different theories based on different policies and practices [are] at play, and the variability of manager discretion as to reasonable and necessary expenses."). Defendants also claim

---

[13] The Court notes that Section 2802 defines "necessary expenses" as used within the statute as "all reasonable costs" incurred by the employee. Cal. Lab. Code § 2802(c). As such, the determination of whether an expense is "reasonable" or "necessary" for purposes of this suit has essentially the same meaning.

30

United States District Court
For the Northern District of California

that the "damages are not tied to any one theory of liability." Opp'n at 24. The Court first sets forth

the holding in *Comcast* before addressing Defendants' two arguments in relation to *Comcast*.

In *Comcast*, the plaintiffs, more than two million Comcast subscribers, had alleged four

different types of antitrust injury that they claimed collectively resulted in subscribers overpaying

for cable TV service, *Comcast*, 133 S. Ct. at 1430-31, but the district court only found *one* theory

amenable to common proof at the class certification stage. *Id.* at 1431. Despite this determination,

the district court accepted the plaintiffs' damages model even though it holistically calculated

damages stemming from *all four* impact theories. *Id.*[14] Because the model "failed to measure

damages resulting from the particular antitrust injury on which petitioners' liability in this action is

premised," the U.S. Supreme Court held that the plaintiffs had failed to prove a method of

quantifying damages on a classwide basis and class certification was thus improper. *Id.* at 1433-35.

In the midst of so holding, the Court noted that the damages model "did not isolate damages

resulting from any one theory of antitrust impact" and thus failed the requirement that "a model

purporting to serve as evidence of damages in this class action must measure only those damages

attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish

that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."

*Id.* at 1431, 1433 ("There is no question that the model failed to measure damages resulting from

the particular antitrust injury on which petitioners' liability in this action is premised.").

The Court rejects Defendants' first argument that damages in this case are not "capable of

measurement on a class wide basis using common proof" on the rationale that individual inquiries

are necessary to determine the amount of damages for each employee. Opp'n at 24. The Court

acknowledges that individual damages calculations will likely be required. Plaintiff concedes as

much. Mot. at 19. Plaintiff himself proposes calculating damages by having class members each

"reconstruct their unreimbursed expenses to the best of their abilities," which will be an

---

[14] Plaintiffs' expert admitted that the model calculated damages resulting from the alleged conduct "as a whole" and did not attribute damages to any one particular theory of impact. *Comcast*, 133 S. Ct. at 1434. The model assumed the validity of all four theories of antitrust impact initially advanced by Plaintiffs: decreased penetration by satellite providers, overbuilder deterrence, lack of benchmark competition, and increased bargaining power. *Id.*

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    individualized inquiry. Mot. at 20; Opp'n at 24. Nonetheless, the Ninth Circuit has already rejected

2    Defendants' argument, holding that the fact that damages calculations would require individualized

3    inquiries does not defeat certification of a Rule 23(b)(3) class even under *Comcast*. *Levya v.*

4    *Medline Industries*, 716 F.3d 510, 513-14 (9th Cir. 2013); *see also Lindell v. Synthes USA*, 2014

5    WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) (holding that post-*Comcast*, "damage calculations for

6    individual class members do not defeat certification.")

7         Second, the Court is not persuaded by Defendants' claim that the "damages are not tied to

8    any one theory of liability," Opp'n at 24, because Defendants do not provide any compelling

9    argument other than to assert that the Court will have to make individualized inquiries with respect

10   to damages. *See id.* (arguing Plaintiff fails to "take into account that different [plaintiffs] incurred

11   expenses on different things and in varying amounts[]"). Rather, the Court finds that Plaintiff has

12   shown that the class members' "damages stemmed from the defendant's actions that created the

13   legal liability" as required under *Comcast, see Leyva*, 716 F.3d at 514, because Plaintiff's proposed

14   damages model (reconstruction by each Plaintiff of the amount of necessary business expenses not

15   reimbursed by Howmedica during the Class Period) will include only amounts attributable to

16   Plaintiff's theory of liability – namely Defendants' alleged noncompliance with Section 2802. *See*

17   *Lindell*, 2014 WL 841738, at *14.

18        In sum, as the Court held in *Stryker*, this Court finds that "[b]ased on the record before the

19   Court, common questions predominate in the inquiry as to whether [Defendants'] business expense

20   reimbursement policy violated Cal. Lab. Code § 2802. The central question to be resolved will be

21   determined based on evidence common to the class -- namely Defendants' documents and

22   testimony." *Stryker*, 2012 WL 1715091, at *9. The issue of whether Howmedica's Sales

23   Representative reimbursement policy violated Section 2802 "may be determined on a class-wide

24   basis, based upon common, though factually disputed, proof." *Id*. Thus, the predominance

25   requirement is met.

26              **2.      Superiority**

27        Rule 23(b)(3) tests whether "a class action is superior to other available methods for the fair

28   and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), the

1   Court evaluates whether a class action is a superior method of adjudicating plaintiff's claims by

2   evaluating four factors: "(1) the interest of each class member in individually controlling the

3   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

4   controversy already commenced by or against the class; (3) the desirability of concentrating the

5   litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in

6   the management of a class action." *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 469 (N.D.

7   Cal. 2004) (citing *Zinser,* 253 F.3d at 1190–92). Looking at these factors requires the Court to

8   "focus on the efficiency and economy elements of the class action so that cases allowed under

9   subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."

10  *Zinser*, 253 F.3d at 1190 (internal quotations and citations omitted).

11          The parties here focus on the factor of manageability.[15] Rule 23(b)(3)(D) requires that

12  courts weigh "the likely difficulties in managing a class action." "Commonly referred to as

13  'manageability,' this consideration encompasses the whole range of practical problems that may

14  render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*,

15  417 U.S. 156, 164 (1974). The manageability requirement includes "consideration of the potential

16  difficulties in notifying class members of the suit, calculation of individual damages, and

17  distribution of damages." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301,

18  1304 (9th Cir. 1990). "Manageability concerns must be weighed against the alternatives and 'will

19  rarely, if ever, be . . . sufficient to prevent certification of a class.'" *Campbell v.*

20  *PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) (quoting *Klay v. Humana,*

21  *Inc*., 382 F.3d 1241, 1272 (11th Cir. 2004)).

22          On the one hand, Plaintiff argues that class treatment would avoid needless expenditure of

23  time, effort, and money that would be spent in individual lawsuits and the potential for inconsistent

24  outcomes. Mot. at 20. Plaintiff also argues that individual lawsuits would rely on the same

25  evidence of Defendants' policies to prove liability. *Id.* at 20-21. On the other hand, Defendants

26  argue this case will be unmanageable because Plaintiff fails to show that the illegal effects of any

27  ────────────────────────────

28  [15] Defendants argue that "manageability" issues prevent Plaintiff from meeting the requirements of
Rule 23(a). Because Rule 23(a) does not impose a manageability requirement but Rule 23(b) does,
the Court analyzes this issue in the context of Rule 23(b).

33

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

non-reimbursement policy can be proven with common evidence in light of how some individual sales representatives were reimbursed for some, or even all, of their business expenses. Opp'n at 16. Defendants further contend that questions about individual managers' practices with respect to reimbursing Sales Representatives "are not simply questions of damages, but of liability, which would make a class trial completely unmanageable and not allow Defendants to litigate their affirmative defenses on individualized issues." *Id.* at 17.

The Court finds Defendants' manageability contentions unpersuasive for two reasons. First, the Court has already held that the question concerning how individual managers reimbursed or did not reimburse Sales Representatives to be a question of damages, not liability (*see* "Predominance," above). Second, the Court finds that should it become necessary to determine the amount of damages owed to individual class members, such an endeavor would not be so cumbersome as to render the case unmanageable. Defendants' citation to *Duran v. U.S. Bank Nat'l. Ass'n*, 172 Cal. Rptr. 3d 371 (2014), Opp'n at 16, is not persuasive. In *Duran*, a group of current and former employees brought suit against U.S. Bank, alleging they had been misclassified as exempt employees and improperly unpaid for their overtime hours. *Id.* at 377. The California Supreme Court overruled the class certification granted by the lower court, holding the lower court's certification was impermissible because it was based on a trial plan that included selecting a sample of putative class members to testify at trial, and determining the defendant's liability based on the testimony of these sample class members. *Id.* at 393. The court instead held that "any trial must allow for the litigation of affirmative defenses, even in a class action case where the defense touches upon individual issues." *Id. Duran* is inapposite because this Court does not intend to select a sample of putative class members to testify at trial, and to determine Defendants' liability based on the testimony of those sample class members. Further, Defendants ignore the fact that the *Duran* court noted that individual determinations concerning damages, or "mini trials," are not by default fatal to class certification. *Id.* at 389-91. The court cited its previous decision in *Sav-On Drug Stores, Inc., v. Superior Court*, another unpaid overtime class action, and noted that *Sav-On Drug Stores* upheld certification "even though the defendant complained that calculation of each class member's recovery would likely degenerate into a multitude of mini-trials." *Id.* (quoting *Sav-*

34

United States District Court
For the Northern District of California

*On Drug Stores, Inc., v. Superior Court*, 34 Cal. 4th 319, 332 (2004) (internal quotation marks omitted)). In *Sav-On*, the court held that "[i]ndividual issues do not render class certification inappropriate so long as such issues may effectively be managed." *Sav-On Drug Stores, Inc.,* 34 Cal. 4th at 334. The court held that the applicable rule "is that the maintenance of the suit as a class action is not precluded so long as the issues which may be jointly tried, when compared to those requiring separate adjudication, justify the maintenance of the suit as a class action." *Id*. at 335 (quoting *Vasquez v. Superior Court*, 4 Cal. 3d 800, 815 (1971)). In the instant case, as explained above, the central question to be resolved is whether Defendants' policy not to reimburse employees as a general matter violated Section 2802. This key issue may "be jointly tried" and thus justifies the maintenance of this suit as a class action.

Overall, the Court finds that Plaintiff has met his burden of establishing all four requirements under Rule 23(a) and the requirements under Rule 23(b)(3) for Plaintiff's Section 2802 claim. Accordingly, the Court finds that class certification is appropriate as to Plaintiff's Section 2802 claim. The Court finds that class certification is also appropriate as to Plaintiff's UCL claim, because this claim is derivative of the Section 2802 claim. *See Lozano,* 504 F.3d at 737. Accordingly, Plaintiff's Motion for Class Certification is GRANTED.[16]

### E.   Proposed Class Notice and Class List

The parties are ORDERED to meet and confer regarding a proposed notice that complies with Federal Rule of Civil Procedure 23(c)(2)(B) and file a joint stipulated class notice within 21 days of the date of this Order. If the parties cannot agree, then each side may file a proposed notice and a brief, up to three pages, in support of their proposed notice. Defendants are also ORDERED to produce a final class list to Plaintiff's counsel within 14 days of the date of this Order.[17]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to certify the class as to Plaintiff's Section 2802 and UCL claims. The Court CERTIFIES the following class: "All

---

[16] Because the Court grants class certification, the Court overrules as moot Plaintiff's objection to Defendants' use of 9 point font in the opposition's footnotes, which Plaintiff claims violates Civil Local Rule 3-4(c)(2) (noting that font of footnotes must be 12 point font). Reply at 1.
[17] Plaintiff's motion states that a class list has already been provided to Plaintiff's Counsel. Mot. at 12.

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

individuals who: (1) were employed by defendant in California from February 1, 2009, until October 1, 2012; (2) held the title of 'Sales Representative'; and (3) worked in the CMF, Reconsruction, Trauma and Extremities, and Joint Preservation Divisions." The Court APPOINTS Tanner Trosper as class representative and APPOINTS Marlin & Saltzman LLP and United Employees Law Group PC as class counsel. The Court ORDERS the parties to prepare the class notice and class list as set forth above.

**IT IS SO ORDERED.**

Dated: August 21, 2014

_____

LUCY H. KOH

United States District Judge

Case No.: 13-cv-0607-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California